## THE ISMAELE.*

### ALLEGRO v. LEBER.*

*(District Court, E. D. New York. December 16, 1882.)*

1. BILL OF LADING—CARGO NOT DELIVERED—BURDEN OF PROOF.

   A cargo of sulphur, on being weighed as delivered, proved to be 28 tons short of the amount stated in the bill of lading, which also contained a memorandum "weight and quality unknown;" three officers of the vessel testified that all the sulphur taken in was delivered, except what escaped through the pumps. *Held*, that the burden was upon the consignee to prove that the difference arose from abstraction of the missing quantity on the voyage.

2. MASTER'S GRATUITY.

   On the above state of facts, the master was *held* entitled to recover a gratuity provided by contract to be paid to him by the consignee on proper delivery of the cargo.

In Admiralty.

*Ullo & Davison*, for the vessel and the master.

*Sidney Chubb*, for the consignee.

BENEDICT, D. J. These two cases were tried together. One action is for non-delivery of 28 tons of sulphur, alleged to have been shipped on board the Italian bark Ismaele in the port of Girgenti, to be thence transported to New York. The second-named action is to recover a gratuity of £10, provided by contract to be paid to the master on proper delivery of the cargo of the same vessel on the same voyage, being the same cargo of sulphur referred to in the action for non-delivery. On the part of the merchant, Leber, the charge is that 28 tons of sulphur were abstracted from the cargo during the voyage in

*Reported by R. D. & Wyllys Benedict.

question. On the part of the bark, the averment is that all the sulphur shipped was delivered, except a small portion that came out through the pumps when the ship was pumped at sea during the voyage in question.

The bill of lading signed by the master describes the cargo as consisting of 558 11-20 tons of sulphur, but it contains a memorandum "weight and quality unknown," and does not, therefore, afford evidence of the quantity shipped. The sulphur was laden in bulk, and constituted the whole cargo of the vessel. The voyage was from Girgenti to New York direct, and there is no evidence that the vessel stopped at any intermediate place during the voyage, or that any of the cargo was lost during the voyage, except the small portion that escaped through the pumps. On arrival in New York the sulphur was weighed as delivered, and found to weigh 530 tons, being 28 tons less weight than stated in the bill of lading. The ship-master, his mate and his boatswain, testify that all the sulphur taken in at Girgenti was delivered in New York, except what escaped through the pumps. The testimony of these persons is sufficient to cast upon the merchant the burden of proving that the difference between the weight stated in the bill of lading, and the weight ascertained at the delivery, arises from an abstraction of the missing quantity from the cargo during the voyage. Accordingly, the merchant has attempted to prove the weight of sulphur shipped. But the testimony taken under a commission to Girgenti for this purpose is fatally defective. This testimony, while it shows that the sulphur shipped went from the warehouse to government scales to be weighed, and thence to the seashore, and then to the bark, contains no legal proof of the actual weight of the sulphur so shipped. The persons who did the weighing, and whose names are disclosed, were not examined. This omission, under the circumstances, is one that cannot be overlooked, and it leaves the testimony respecting the weight of the sulphur shipped incomplete, and insufficient to overthrow the testimony in behalf of the bark that all the sulphur shipped was delivered in New York.

The merchant has also sought to prove an abstraction of cargo by evidence respecting the condition of the cargo under the three hatches of the vessel at the time when the hatches were opened in New York, and from this evidence draws the conclusion that sulphur was shoveled out of each of the three hatches during the voyage. But I am unable to draw such a conclusion from the testimony that has been presented. The officers of the vessel explain the appearance of

the cargo under the hatches by saying that they were compelled to retrim the cargo at sea after heavy weather, and in so doing left the sulphur under the hatches in the condition it was in on arrival; and their testimony is sufficient to overcome the not very probable suggestion that the three hatches of the bark were opened during the voyage, and sulphur shoveled out of each hatch to the amount, in all, of 28 tons, and the same placed on board some other vessel supposed to have come along-side the bark for that purpose. Certainly it would be improper to infer that such a transaction had taken place from the mere appearance of the cargo at the time the hatches were opened in New York, in the face of positive testimony that no such thing was done. But little support to the merchant's case is obtained from the testimony that, when the hatches were opened, the mate falsely stated that sulphur had been thrown overboard during the voyage. The mate could speak very little English, and those who conversed with him could not understand Italian, and I am not certain that he was understood. It is quite likely that he was alluding to sulphur that had been cast out by the pumps.

My conclusion, therefore, is that the non-delivery of sulphur charged by the merchant has not been proved. The result is that the libel of the merchant must be dismissed, with costs, and the libel for the gratuity must be sustained.