PLANTERS' FERTILIZER MFG. CO., Limited, v. ELDER et al.

(Circuit Court of Appeals, Fifth Circuit. May 1, 1900.)

No. 862.

1. SHIPPING—BILLS OF LADING—CONSTRUCTION AND EFFECT.
   A bill of lading is both a receipt for goods and a contract to carry, and as a receipt it makes a prima facie case only, and is open to explanation.

2. SAME—SHORTAGE IN CARGO DELIVERED—BURDEN OF PROOF.
   Where bills of lading for cargoes of phosphate specified the quantity, but contained the further statements, "Weight and quantity unknown," or "Weight unknown," the burden rests upon the shipowners to account for any discrepancy between the quantity delivered and that specified; but this is met by proof that the full quantity loaded was delivered, and this may be shown as against a consignee who has paid drafts drawn by the shippers for the full quantity specified, where the bills of lading were attached to the drafts.

3. SAME—FREIGHT—CONSTRUCTION OF CONTRACT.
   When a bill of lading presented by the shipper, and signed by the agent of the ship, recites a shipment in bulk as so many tons, at so much freight per ton, it will be construed as a contract for carriage in bulk, and the freight is not subject to reduction because the cargo when delivered does not weigh out the quantity stated.

Appeal from the District Court of the United States for the Eastern District of Louisiana.

The libelants claim $2,936.50 for freight due for the carriage of two cargoes of superphosphate by their steamships Merrimac and Montezuma from Liverpool to New Orleans, the rate of freight being eight shillings per ton. The libel alleges that bills of lading for the two cargoes were issued and delivered to the shippers, copies of the same being annexed to and made part of the libel. The bill of lading marked "Exhibit A" is stated to be "in bulk," 750 tons, 19 cwt., and 1 qr., and the bill is indorsed, "Weight and quantity unknown." The freight is stated to be eight shillings per ton. In the bill of lading marked "Exhibit B," that issued per steamship Merrimac, the cargo was declared to be "in bulk," 750 tons, 6 cwt., and 2 qrs. This, however, was to be reduced by 145 tons "short shipped," to be forwarded by the steamship Montezuma, the other steamer, and was included in bill of lading "A," that issued per steamship Montezuma; and this bill of lading is indorsed "Weight unknown," and the freight is stated at eight shillings per ton. In the freight bill, being Exhibit C2, attached to the libel, the quantity of phosphate upon which the

payment of freight was demanded is declared the same as that set out in the two bills of lading. The respondent's answer admitted the shipments by the two steamships named, and set up that, according to the bills of lading in the possession of respondent, the cargoes were 750 tons, 6 cwt., and 2 qrs. by the Merrimac, of which 145 tons were not shipped by that steamer, but were retained to be forwarded subsequently by the Montezuma; that, after deducting this amount from the originally intended cargo of the Merrimac, there was still, besides, short, lacking, and deficient $39\ ^{329}/_{2240}$ tons of the quantity received by libelants for transportation; that the value of this short quantity of superphosphate was $483.46; that the cargo actually brought and delivered by the Montezuma was $41\ ^{708}/_{2240}$ tons less than that actually received for carriage; that of this shortage part was of the quality known as 12 per cent., and the remainder was 14 per cent., there being $40\ ^{708}/_{2240}$ tons of the former, and 1 ton of the latter,—the former being of the value of $408.39, and the latter $12.39; that the total value of the shortage in both cargoes was $940.20. The answer further says that, prior to the arrival of either vessel at New Orleans, respondent paid the bills of exchange drawn for the price of said phosphate by its vendors, which bills of exchange were presented with the bills of lading issued by libelants, setting out the receipt by them for carriage of the entire quantity of phosphate,—that is, 750 tons, 6 cwt., and 2 qrs. by the Merrimac, and 650 tons, 19 cwt., and 1 qr. by the Montezuma,—while, as a matter of fact, there was delivered to respondent only this quantity, less $80\ ^{1037}/_{2240}$ tons, which was of the value of $904.20, and that the amount due libelants was only the freight on the phosphate they actually delivered, less the value of the amount of phosphate they received for delivery, but failed to deliver; that this amounted to $1,977.46, which respondent admitted to be due and deposited in the registry of the court; that it was entitled to deduct from the $2,936.50, freight upon the whole cargo, as shown by the bills of lading, the sum of $959.04, the value of the phosphate which was not delivered; and the respondent, by way of cross libel, claimed the right to deduct this difference, as proposed by the answer. By a supplemental answer, respondent claimed that libelants' claim should be further reduced by the sum of $52.53, the freight on the portion of the cargo which it claimed was not delivered, and reduced its tender to $1,874.93, which amount was paid into the registry, and withdrawn by the libelants without prejudice to either party.

There is little conflict in the evidence, and it establishes that the shippers of the superphosphate delivered the goods to the ships on their own weights and measurements, and that the same was received and stowed without any inspection or weighing on the part of the ships; that the shippers made out and presented for signature bills of lading, reciting the amount in bulk, with alleged weights; that as presented the bills of lading were indorsed in the one case, "Weight and quantity unknown," and in the other, "Weight unknown," and as thus indorsed were signed and delivered by the agents of the ships; the consignee paid drafts drawn by the shippers for the full amount of superphosphate as formally recited in the bills of lading, the bills indorsed "Weight unknown" accompanying the drafts; that all the goods delivered by the shippers and received by the ships were safely carried and fully delivered, without appreciable loss; that in the delivery to the consignee in the port of New Orleans the goods were not all weighed, but the weight of the whole was averaged under the joint inspection of an agent of the consignee and one of the officers of the ship; that the method followed in ascertaining the weight was that 10 out of every 100 wheelbarrow loads were weighed, and on these weights the whole, when delivered, was estimated; and that, as ascertained by the above method, there was an actual shortage of some 80 tons in the delivery of both cargoes.

The district court rendered a decree in favor of the libelants for the full amount claimed, in the following terms: "It is ordered, adjudged, and decreed that the libelants, Elder, Dempster & Co., do have and recover of and from the respondent, the Planters' Fertilizer Manufacturing Company, the sum of two thousand nine hundred and thirty-six $^{50}/_{100}$ dollars ($2,936.50), with five per cent. interest on the sum of one thousand four hundred and sixty-seven $^{63}/_{100}$ dollars ($1,467.63) from December 6, 1894, until paid, and like interest

on the sum of one thousand four hundred and sixty-eight $87/100$ dollars ($1,-468.87) from December 22, 1894, until paid, and all costs of suit, subject to a credit of one thousand eight hundred and seventy-four $93/100$ dollars ($1,874.93) paid April 14, 1896."

Branch K. Miller, for appellant.
J. Ward Gurley, for appellees.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

PARDEE, Circuit Judge, after stating the facts as above, delivered the opinion of the court.

The main contention of the appellant is to the effect that, as the evidence shows that there was a short delivery of cargo, the libelants were estopped by the recitation of the weights as given in the bills of lading as to the amount actually received by the ships to be delivered; and the more so as the bills of lading, as issued by the ships' agents, were handed over to the shipper, who used them to draw on the consignee for the full amount of the cargo recited to have been received and shipped, and as the consignee, relying upon the verity of the bills of lading and in advance of the arrival of the cargo, paid bills of exchange drawn for the full value of the goods as recited. A bill of lading is of a twofold character. It is a receipt for goods, and a contract to carry. As a receipt, it makes a prima facie case only, and is undoubtedly open to explanation. See The Lady Franklin, 8 Wall. 325, 19 L. Ed. 455; The Delaware, 14 Wall. 579, 20 L. Ed. 779; Pollard v. Vinton, 105 U. S. 7, 26 L. Ed. 998; Friedlander v. Railway Co., 130 U. S. 416, 9 Sup. Ct. 570, 32 L. Ed. 991. As the bills of lading in the present case, although containing formal recitals of specific weights, which were made, probably, for the purpose of determining the amount of freight to be paid, were indorsed in one case, "Weight and quantity unknown," and in the other, "Weight unknown," there can be no question that the same are open to explanation in regard to the exact amount of goods delivered to the ship; and, as the bills of lading accompanied the drafts drawn by the shippers and paid by the consignee, the consignee was undoubtedly charged with notice that the recitals of weights contained in the bills of lading were purely formal.

The bills of lading in this case being open to explanation, the only practical question is as to the burden of proof. It may well be that in the first instance this would be upon the owners of the ships. In the present case it has been met, so far as to show, by undisputed evidence, that all of the cargo actually received was fully delivered. The conclusion, of course, is that where the bill of lading is indefinite as to the amount of goods received, and the proof shows that all the goods received were actually delivered, the ship must be relieved in regard to alleged short delivery. This conclusion is in accord with adjudged cases called to our attention.

In Campart v. The Prior (D. C.) 2 Fed. 819, it was held:

"Where wheat was shipped to France by several parties under bills of lading specifying that the quantity and quality of the wheat was unknown, and suit was brought for nondelivery of the whole amount, held, that the burden of

proof was on the libelants to show the quantity of wheat delivered in Havre, and their case must fall for lack of evidence; the claimants of the ship showing that all the wheat shipped was delivered, and the bills of lading surrendered by the consignees."

In The Ismaele (D. C.) 14 Fed. 491, it was held:

"A cargo of sulphur, on being weighed as delivered, proved to be 28 tons short of the amount stated in the bill of lading, which also contained a memorandum, 'Weight and quality unknown.' Three officers of the vessel testified that all the sulphur taken in was delivered, except what escaped through the pumps. Held, that the burden was upon the consignee to prove that the difference arose from the abstraction of the missing quantity on the voyage."

There is also some contention on the part of the appellant that the decree of the district court is erroneous in that it allows freight upon the amount of cargo recited in the bills of lading, when in fact there was a less amount, by some 80 tons, actually received and carried. On the face there appears to be some merit in this contention, but an examination of the record shows that the evidence is silent as to the actual contract for carriage, except as contained in the bills of lading; and as in the bills of lading the shipments are recited in bulk as so many tons, at so much per ton, we are inclined to hold with the lower court, and allow for the freight as a contract of carriage in bulk.

The appellant also contends that the decree of the court below is erroneous for not allowing interest upon the credit of $1,874.93 from the date of deposit. As we interpret the decree, while interest is allowed upon the amount of freight from the time of the delivery of the goods, the whole is subject to a credit of $1,874.93 from the date of April 14, 1896, and that, we take it, was the date at which the money paid into court by the respondent was withdrawn by the libelants. If we are correct in this, there is no error in the decree in the matter of interest. The decree appealed from is affirmed.