## ARGO STEAMSHIP CO. v. SEAGO et al.

(Circuit Court of Appeals, Fifth Circuit. May 8, 1900.)

No. 863.

SHIPPING—SUIT FOR DAMAGE TO CARGO—BURDEN OF PROOF.

Where a bill of lading for a shipment of sugar recited the receipt of the sugar in apparent good order and condition, and stipulated for its delivery in like good condition, proof that it was delivered in a damaged condition casts upon the vessel the burden of showing either that it was not in good order when received, or that it was damaged through one of the perils excepted in the contract.

Appeal from the District Court of the United States for the Eastern District of Louisiana.

Saml. L. Gilmore and H. C. Cage, for appellant.

Jas. McConnell, for appellees.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

PARDEE, Circuit Judge. On the 6th of January, 1897, the steamship Europa arrived in the port of New Orleans on a voyage from Antwerp. A portion of her cargo consisted of 2,000 bags of Dutch granulated sugar, for which she had issued a bill of lading in the usual form, certifying that they were in apparent good order and condition when received on board of said steamship, and contracting to deliver the same at the port of New Orleans "in like good order and condition." A. K. Seago & Co., the appellees herein, were the consignees and owners of the sugar, and upon its discharge from the ship upon the levee they found the same so badly damaged that they refused to receive it, and it was thereupon stored in the government warehouses, and the steamship was libeled to respond for the damages sustained in the premises, amounting to the sum of $1,512.37. In the answer the defendant admits that the ship received the sugar in good order as alleged in the libel and shown in the bill of lading. The answer then recites, to wit: (1) That the ship encountered bad weather; (2) that a fire occurred on board; (3) that the ship discharged the cargo into a warehouse, and reloaded the same. The answer does not aver that the sugar in question was damaged by or from any of these causes, nor that it was damaged at all from any cause. The averment of the answer in this connection is that "the damage, if any, is much less than is alleged in the libel"; and in speaking of what portions of the cargo were damaged by fire and water and what were not it is distinctly stated that the sugars, the subject of this litigation, were included in the sound portion when discharged to warehouse in Plymouth. After such averments of noninjury by the fire and water, the answer alleges:

"Respondents do not know the amount of damage, if any, sustained by said sugar, but they are informed and believe and allege that, if any,—which is not admitted,—the same is much less than is alleged in the libel; and respondents further allege that, if any damage was occasioned to the said sugar, same did not happen by or through any unseaworthiness of said steamer, her tackle, apparel, or furniture, nor by or through any negligence, delay, default, or misconduct of the officers or crew of the said vessel, nor any of them, nor of any person or persons on board or belonging to the said steamer, for that they, all and every of them, did and used their utmost endeavors for the preservation of said ship and her cargo, and to prosecute the intended voyage without loss, damage, or delay; and respondents especially plead the exceptions in their said bill of lading, which they allege cover the damage, if any, to the said sugar."

The libelants took the depositions of numerous witnesses and experts, who prove that the sugar was not only badly damaged, but, as found in the report of two experts appointed by the court to examine and report on the condition of the sugar: "The entire lot was damaged to such extent that the sugar had become unmerchantable and salable only to a refinery or confectioner." The defendant produced and examined only one witness in support of the allegations in the answer on the subject of the bad weather, the fire and the unloading and reloading to and from the warehouse. This witness, although he was on the ship during the voyage in question, and testified about the three incidents referred to, did not testify that the sugar was damaged by either; on the contrary, his evidence tends to show that the sugar in question was not damaged by either of the three causes mentioned. The matter of damages was referred by the court to a commissioner to "ascertain and report the amount of the damages," who, after taking testimony and hearing the parties, filed his report, awarding the sum of $1,705.12. As the libelants had in the libel estimated their damage at a lower figure, a remittitur was entered for the difference, to wit, $162.75. No opposition or exception was filed to this report of the commissioner, and it was, on motion, confirmed, and a final decree rendered for $1,542.37, with interest and costs. On this appeal the following errors are assigned:

"(1) That the court erred in holding that the maritime disasters suffered by the ship were not full justification for any damage that the sugar may have suffered; (2) that the court erred in holding the defendant ship to any further proof of care and diligence than that contained in the record; (3) that the court erred in not sustaining the exception in the bill of lading in reference to damage by warehousing; (4) that the court erred in not sustaining the exception in the bill of lading in reference to fire, collision, and perils of the sea; (5) that the court erred in not finding that the wet condition of the sugar might not have been caused by absorption of water beyond the control of the ship; (6) that the court erred in allowance of damages herein, if it should be found that any damage should be allowed; (7) that the court erred in allowing, as damages, expenses which would necessarily have been incurred by the libelant, even if the sugar should have arrived in good condition."

The libelants having alleged and proved that the sugars were delivered in a damaged condition, and as the bill of lading recited that the sugars were received in apparent good order and condition, and the carrier's contract was to deliver in like good order and condition, the burden of proof was on the claimant to show, either that the goods were not in good order when received by the ship (see Nelson v. Woodruff, 1 Black, 156, 160, 17 L. Ed. 97), or that they were damaged while

in transit through one of the perils excepted in the contract (see Clark v. Barnwell, 12 How. 272, 280, 13 L. Ed. 985). Clark v. Barnwell is the leading case on the subject, and has been universally followed down to the present day. See 5 Notes U. S. Rep. p. 88. As the claimant failed to allege and prove that the goods were in bad order when received, or were damaged through any one of the excepted perils, no one of the first five assignments of error is well taken. As no exceptions were filed to the report of the commissioner in the matter of damages, and the same was confirmed by the court without opposition, and the transcript shows no question whatever made thereon in the district court, the questions sought to be raised by the sixth and seventh assignments of error cannot be considered. The decree of the district court is affirmed.