DONALDSON et al. v. SEVERN RIVER GLASS SAND CO.

(District Court, E. D. Pennsylvania. June 12, 1905.)

No. 3.

1. SHIPPING—LIABILITY OF CHARTERER FOR DEMURRAGE.

The charterer of a barge cannot be held liable for demurrage because of delay in unloading a quantity of coal from the barge's hold, after she arrived at the place of loading, owing to the inadequacy of the charterer's facilities, where the coal was taken on by the master under a contract made with a third party after the charter, and without consulting the charterer.

2. SAME—FREIGHT—CONSTRUCTION OF CHARTER PARTY.

Under a charter of the whole of a barge, requiring the charterer to provide her with a cargo of "not less than seven hundred tons of sand,"

to be paid for at the rate of 90 cents per ton when delivered, she is entitled to recover the amount so stipulated for on delivery of the cargo as shipped by the charterer, although, without her fault, less than 700 tons was loaded.

3. SAME—INTEREST AND COSTS—TENDER.

A charterer is not relieved from the payment of interest or costs in a suit against him to recover charter hire by an offer to pay less than the sum due, renewed after suit brought, but without paying the money into court, or including in the offer interest or costs up to the time it was made.

[Ed. Note.—For cases in point, see vol. 13, Cent. Dig. Costs, §§ 137–164; vol. 29, Cent. Dig. Interest, § 114.]

In Admiralty. Suit to recover freight and demurrage under a charter.

Howard M. Long, for libelants.
Daniel V. Summerill, Jr., for respondent.

HOLLAND, District Judge. The libelants in this case claim the sum of $630, being 90 cents per ton on 700 tons of sand, and demurrage for 4½ days at $20 per day, on the charter party executed by the parties to this suit on September 8, 1903.

The charter party provides that the barge B. T. Donaldson, of Philadelphia, then lying at the harbor of Baltimore, "agrees in the freighting and chartering of the whole of the said barge * * * unto the Severn River Glass Sand Company for a voyage from the Severn river sand banks to Philadelphia," and the said company agrees to furnish "a cargo of not less than 700 tons of sand loose," for which it agrees to pay the sum of "90c. per ton of 2,000 pounds payable on delivery of cargo," and when the barge is ready she is to receive "dispatch for loading and unloading," and for every day's detention by default of the sand company or its agent she is to receive the customary amount per day as demurrage. After the barge was chartered, the firm of Hite & Rafetto, not a party to this cause, agreed with the master of the barge to ship 90 tons of coal from Baltimore to the sand company's banks, and the coal was loaded in the hold of the barge, which was 12 feet deep. The barge arrived at the Severn River Glass Sand Company's banks, on the Chesapeake Bay, on September 10, 1903. The company, not being provided with machinery for unloading the coal from the hold of the barge, did not succeed in discharging the coal until September 17, 1903, after which it was necessary to thoroughly clean the hold of the barge, in order that the sand, which was used for making glass, should not be damaged or stained with particles of coal. The evidence shows that there was no necessity for putting this coal in the hold, and, if it had been loaded on deck, it could have been discharged more expeditiously, avoiding considerable delay. The libelants contend that the company was not ready to provide a cargo of sand, and that they were delayed from September 17th to September 22d in the loading; while the respondent avers that this time was the ordinary dispatch in loading sand at the banks.

The evidence is conflicting, but I am of the opinion that there was no unusual delay entitling the libelants to demurrage; and, as to the time devoted to unloading the coal, the libelants are not in a position to claim demurrage, as the delay, if unusual, was the result of their own act in taking on board this cargo of coal after the barge had been chartered to the respondent, and without consulting the management at the banks as to its facilities for unloading the coal from the hold of the barge. They took the risk as to the delay that might be caused by reason of shipping the coal, and I cannot see how it can be charged to the respondent in this case.

When the captain was informed that the loading of the sand was complete, he protested that there were not 700 tons on board, and he came to this conclusion from the fact that he had marks on the bow of the barge by which he judged the weight of a cargo. The respondent's superintendent, however, insisted that the amount called for by the charter party had been placed aboard the barge, and demanded that Capt. Schlear sign the bill of lading for that amount, which the captain did, under protest. Upon the arrival of the barge at Dickinson Street Wharf, Philadelphia, it was found that she had only carried 595.70 net tons, and the respondent refused to pay for more than that amount. The barge on its voyage up the Chesapeake, and through the Delaware and Chesapeake Canals, encountered no stormy weather, nor any accident which would cause her to lose any of the sand placed aboard; but the respondent endeavored to account for the loss of weight by reason of the fact that the barge was out of repair and had been leaking during the voyage, and that 104.31 tons were pumped out with the water. This is denied by the libelants, and I am convinced that the whole cargo shipped was delivered at Philadelphia. The method adopted at the banks for weighing the sand was not such as to enable the respondent to say with any degree of certainty how much sand was placed aboard, as they simply weighed a few wheelbarrow loads and then estimated the remainder, and in this way calculated the amount of the cargo shipped; and in unloading at Philadelphia the sand was hauled some distance in carts, and some of it lost before it was weighed, so that whatever difference there was in the weight does not appear to be attributable to any fault of libelants. Having delivered the cargo at Philadelphia, libelants insist they are entitled to freight on 700 tons of sand at 90 cents per ton, notwithstanding the fact that, under the circumstances, less tons were delivered here. The charter party provides for the chartering of the "whole of the barge," and that "a cargo of not less than seven hundred tons of sand loose" shall be provided by the respondent, which cargo shall be paid for at the rate of 90 cents per ton when delivered at Philadelphia. The barge delivered the cargo at Philadelphia, and under the contract we think that the libelants are entitled to recover the full amount of 90 cents per ton on not less than 700 tons of sand. It is true that the law presumes that freight is only paid upon the cargo which is delivered, but this is only the case where there is no express provision to the contrary. Where,

however, a written contract provides otherwise, and requires, as in this case, that a cargo of not less than a certain number of tons, at so much per ton, shall be shipped, and that amount paid upon delivery of the cargo, the libelants are entitled to recover the minimum amount stipulated for in the charter upon delivery of the cargo as shipped by the charterers. Planters, etc., Co. v. Elder et al., 101 Fed. 1001, 42 C. C. A. 130; Christie et al. v. Davis Coal & Coke Co. (D. C.) 95 Fed. 837; Gibson v. Brown (D. C.) 44 Fed. 98.

The respondent, prior to bringing suit, offered to pay to the libelants 90 cents per ton on 595.70 tons of sand, and payment of this amount was renewed after suit was brought, but it was not paid into court, nor was there any offer of payment of interest and costs up to the time the tender was made. As the respondent, neither before nor after suit was brought, tendered such an amount as the libelants are justly entitled to recover, we do not think that it should be relieved of interest and costs. Any real offer to pay by one then ready to pay the amount due before bringing suit, or, in case suit is brought, if the offer is renewed in such a way as to indicate readiness and willingness to pay the amount due, together with interest and costs to the time of tender made, will be treated as a lawful tender, regardless of the fact as to whether the money was produced or not, otherwise the party in default will be required to pay interest on the whole amount found to be due and the costs of suit. Benedict's Adm. (3d Ed.) § 552d; Boulton and Others v. Moore (C. C.) 14 Fed. 922; Lichtenfels et al. v. Phillips (D. C.) 53 Fed. 153.

Let a decree be entered in favor of the libelants for the sum of $630, with interest from January 14, 1904, and costs.