## THE LA KROMA.

(District Court, E. D. Pennsylvania. June 12, 1905.)

No. 80.

1. SHIPPING—SHORTAGE IN WEIGHT OF CARGO DELIVERED—EVIDENCE TO EXONERATE SHIP.

A ship is relieved from liability for a shortage in weight of a shipment of vegetable fiber in bales under a bill of lading containing the clause, "Not responsible for weight, nor quality, nor for loose bales," where it shows that all the bales shipped were delivered.

2. SAME—DAMAGE TO CARGO—BURDEN OF PROOF.

A ship has the burden of explaining the cause of damage to cargo shown to have been received in good condition to relieve itself from liability for such damage.

[Ed. Note.—For cases in point, see vol. 44, Cent. Dig. Shipping, §§ 479–482.]

In Admiralty. Suit to recover for shortage and damage to cargo.

Anson M. Beard, White, White & Taulane, and Ernest E. Prevost, for libelant.

Henry R. Edmunds, for respondent.

·HOLLAND, District Judge. This libel was filed for the recovery of damage to a shipment of 2,700 bales of vegetable fiber from Oran, in Algiers, consigned to libelants at Philadelphia on the steamship La Kroma on the 24th day of January, 1903, and arrived in Philadelphia on February 23, 1903. The fiber was sold to Peter Woll, Jr., importer, of Philadelphia, on delivery weight, upon the arrival of the steamer at this port. The bill of lading under which the cargo was shipped, as translated from the Italian, is as follows:

"Oran, 24th of January, 1903.

"There has been shipped by Mr. Jules Borgeaud on the ship called The La Kroma of which Captain * * * for to carry and conduct to destination Philadelphia and consigned to order, merchandise hereinafter mentioned and marked as against her. See contra tax 300½ tons, freight $3.50, $1,051.75 B. O. numeral 1–2700, number of bales 2700 bales, Crin vegetable fibre 305,256 kilos.

"Repeated in letters. Having received them in good condition without being damaged or deteriorated you will pay the freight.

"The charger                        Not responsible for the weight, nor quality,
"Jules Borgeaud                    nor for loose bales.
                                            "[Signed]   Captain R. D. Paravich."

Oran is an open roadstead, and when the La Kroma arrived at that port the fiber was loaded from lighters upon which it had been placed awaiting her arrival. The number of bales placed upon the vessel was 2,700, and according to the weight at Oran there was 305,256 kilos, which equals 674,615 pounds. Owing, however, to the fact that the bales were loose when loaded, the captain, before signing the bill of lading, insisted upon inserting the clause, "Not responsible for the weight, nor quality, nor for loose bales." The vessel arrived in Philadelphia on the 23d day of February, 1903, and the captain requested a survey of the cargo. Four experienced sea captains were appointed, who made an examination, and afterwards testified that the cargo, consisting of spiegel iron, magnesite ore, and 2,700 bales of vegetable fiber, was properly stowed and dunnaged, but that the fiber was damaged from sweatage of the ship. The cargo was discharged at this port, immediately upon the arrival of the vessel, by Thomas Grace, a stevedore at this port, and the fiber was weighed by John W. Davis, a weigher appointed by the purchaser. The evidence shows that many of the bales were loose in place, as the strand of fiber with which they were bound had broken, but left them in such shape as to enable the stevedore to count the bales, although a very considerable number of them fell apart as soon as moved. The number, however, of bales, of whatever weight, was ascertained to be 2,700 by the stevedore who did the work. The weigher found 2,584 bales intact, weighing 602,364 pounds, and 22,083 pounds in bulk, making a total of 624,447 pounds, which was 49,832 pounds less than the weight shown by the bill of lading. All of the bales were damaged to some extent, 55 of which had a layer of blackened material, similar to decayed vegetable, half way up the height of the bales; and the remainder of the bale was musty, moldy, and discolored, graduating up to the top, where it was nearly normal in color. On 196 bales there was a loss of about 40 per cent., on 106 bales the loss was about 25 per cent., and on the remaining bales the loss was about 10 per cent. The damaged material was entirely useless.

The libelants made an allowance to the purchaser in the sum of $490.50, and presented a claim to the vessel, after she had been discharged, in the sum of $251.34 for shortage in weight, without mentioning anything as to the damaged material; but for this they made a claim against the insurance company, alleging perils of the sea as the cause of the damage. This claim was rejected by the insurance company, and within a year suit was brought against the vessel in this port upon her arrival here on a subsequent trip. The libelants claim the sum of $300 for short weight, and $900 the value of the damaged material.

It appears that in the transportation of this article of merchandise there is a shrinkage in the weight of from 3 to 34 per cent., and in this case there was a decrease in weight of 18 per cent.; but whether this difference in the weight resulted from the usual shrinkage, or from the manner of weighing it by the different weighers, or partly from both causes, I am convinced that all the bales shipped at Oran arrived at this port. The bill of lading expressly states

that respondent is "not responsible for weight, nor quality, nor for loose bales," and the evidence establishes the fact that all the bales of fiber which were shipped were delivered here. The burden of accounting for the discrepancy has thereby been met, and the respondent cannot be held liable for the difference. Fertilizer Co. v. Elder et al., 101 Fed. 1001, 42 C. C. A. 130.

As to the cause of the damage to the fiber, the evidence is somewhat conflicting. It is claimed by the libelants that the fiber was shipped in good condition at Oran, and the persons who handled it there were called and testified to that effect. The evidence, however, discloses that this fiber, the same as all other of a similar nature, will become musty and blackened if stowed away while damp. It was shipped in an iron vessel, in which there is ordinarily considerable sweatage, and especially is this the case where they come from a warm to a cold climate. The expert chemists called by both the libelants and respondent show that the condition of this fiber could not have been brought about by contact with the other part of the cargo. The stain and discoloration of the fiber was not only found on the outside, where it might come in contact with the spiegel iron and magnesite ore, but it extended up through the entire bale in many instances, and much of the fiber was damaged in places that were entirely away from any influence or effect that the other material in the vessel could have upon it. So that from the whole evidence it would seem that the damage might have been by the usual sweatage of the iron vessel passing from the warm climate of Algiers to the cold climate of Philadelphia in midwinter, but this is not clear. In fact, the respondent fails to explain the cause of the discoloration.

There are no exceptions from liability provided for in the bill of lading other than the notation of the captain that the vessel was "not responsible for the weight, nor quality, nor for loose bales." Having delivered all of the bales which were shipped, although some of them were found to be loose in place upon arriving at this port, without any fault on the part of the management of the vessel, they are relieved of any liability therefor. The disclaimer in the bill of lading of any responsibility for the "quality" can mean no other than the commercial quality of the fiber shipped, and cannot now be held to mean that the vessel shall be relieved from any liability for a damaged condition of the fiber delivered here, when the evidence shows it was in good condition when shipped at Oran, and the uncontradicted evidence is to the effect that the fiber was in good condition when it was placed aboard the La Kroma, and the burden rests upon the respondent to explain the cause of the damage to the merchandise in transit. Argo Steamship Co. v. Seago et al., 101 Fed. 999, 42 C. C. A. 128; Fertilizer Co. v. Elder et al., 101 Fed. 1001, 42 C. C. A. 130; Clark et al. v. Barnwell et al., 53 U. S. 272, 13 L. Ed. 985. This it has failed to do, and it should therefore pay to the libelants the damage they have suffered by reason of the musty and discolored condition of the fiber upon its arrival at Philadelphia.

The evidence, however, is not sufficiently full to enable the court to ascertain this amount, and a decree will therefore be entered in favor of the libelants in accordance with this opinion, and the matter, upon application, will be referred to a commissioner for the purpose of ascertaining the amount due.