PACIFIC MAIL S. S. CO. v. WESTERN PAC. R. CO.

(Circuit Court of Appeals, Ninth Circuit.   May 6, 1918.)

No. 3109.

1. COMMERCE &⟶85—INTERSTATE COMMERCE—EXTENT OF AUTHORITY OF COM-
MISSION.

While an interstate railroad company is subject to the act to regulate
commerce, and the provisions of its tariffs filed pursuant to section 6
(Comp. St. 1916, § 8569) must be strictly observed, yet the Interstate Com-
merce Commission is without jurisdiction over ocean carriage of export
and import traffic destined to or coming from nonadjacent foreign coun-
tries.

2. CARRIERS &⟶30—INTERSTATE COMMERCE—TARIFFS—CONSTRUCTION.

As a joint rate cannot be made between an interstate railroad company
and a carrier by water transporting property between the United States
and a nonadjacent foreign country, provisions in the tariffs of a railroad
company filed in accordance with Act to Regulate Commerce, § 6 (Comp.
St. 1916, § 8569), for absorption of switching charges and state tolls on
traffic destined to or originating in foreign countries, *held*, in view of
rule 71 of the Interstate Commerce Commission, to apply only to state
tolls imposed on land carriage, and not tolls and charges imposed on
the water carrier.

3. TENDER &⟶12(2)—INTEREST—ALLOWANCE.

Though defendant, an ocean carrier, indebted to a railroad company for
freight, tendered payment of part of the indebtedness, interest may be
allowed on the entire sum recovered.

In Error to the District Court of the United States for the Second
Division of the Northern District of California; Wm. C. Van Fleet,
Judge.

Action by the Western Pacific Railroad Company, a corporation,
against the Pacific Mail Steamship Company, a corporation.   There
was a judgment for plaintiff, and defendant brings error.   Affirmed.

Knight & Heggerty and Charles J. Heggerty, all of San Francisco,
Cal. (C. W. Durbrow, of San Francisco, Cal., of counsel), for plain-
tiff in error.

A. R. Baldwin and A. P. Matthew, both of San Francisco, Cal., for
defendant in error.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

HUNT, Circuit Judge.   The Western Pacific Railroad Company,
to be called "plaintiff," brought this action against the Pacific Mail
Steamship Company to recover $7,341.46, as the inland proportion on
freight charges on through shipments moving ·between points in the
United States and oriental ports.   The Steamship Company, admitted
that $5,233.08 of the sum claimed was due, but denied any greater in-
debtedness.   Tender and refusal were had.   The Steamship Company,
as an offset, pleaded that the terminal tariffs of the Railroad Company
published and filed as required by the act to regulate commerce, pro-
vided that the Railroad Company would absorb state toll on the ship-
ments involved, and alleged that the terminal tariffs, while published

by the Railroad Company, were applicable to import and export cargo interchanged by the parties at Piers 42 and 44 at the port of San Francisco; those piers being where the Steamship Company received and discharged cargoes. It was further pleaded that the Steamship Company, under the rules of the Board of State Harbor Commissioners of the port of San Francisco, was required to pay the charges assessed for state toll; that these charges were paid by the Steamship Company for the Railroad Company with the knowledge of the latter and according to the general custom then existing at San Francisco.

These additional facts appear in the answer: The Railroad Company published and filed with the Interstate Commerce Commission, as required by law and the rules of the Commission, its terminal tariffs providing for the absorption by it, among other charges, of the state tolls assessed by the Board of State Harbor Commissioners for the port of San Francisco, on shipments originating or delivered at wharves served by the Southern Pacific Company, the Atchison, Topeka & Santa Fé Railway Company, and the Belt Line Railroad, "on all competitive traffic" originating at or destined to oriental ports in cases where the Western Pacific "receives the line haul." The tariffs covering absorptions to be made are more fully cited as follows:

"At San Francisco, Cal., this company will absorb switching charge of $2.50 per car for switching freight, carloads, to or from wharves served by the Southern Pacific Company, the Atchison, Topeka & Santa Fé Railway (coast lines) and the State Belt Railway; also will absorb state toll. Loading and unloading charges will also be absorbed except on lumber and its products. At Oakland (Western Pacific Mole), Cal., this company will absorb wharfage and handling charges on all freight except lumber and its products and empty carriers returned.

"2. On all competitive traffic, except as provided for in paragraph No. 1, received from or delivered to vessels at wharves of the Southern Pacific Company, Atchison, Topeka & Santa Fé Railway Company (coast lines), or State Belt Line Railway at San Francisco, Cal., this company will absorb switching charge of $2.50 per car; also will absorb state toll."

In compliance with the rules of the Board of State Harbor Commissioners, the Steamship Company paid the state tolls on the shipments received on board from the railroad and delivered on Piers 42 and 44 from the ships, the tolls "which were required to be paid by the vessels of the Steamship Company receiving and discharging such cargo," amounting to $2,069.25, and also paid the freight for the Railroad Company in error on 30 packages carried by the Steamship Company and delivered to the Railroad Company, making a total of $2,103.38 paid by the Steamship Company in behalf of the Western Pacific. The Steamship Company collected $7,341.46 on shipments originating at Manila and transported to San Francisco and there delivered to the Railroad Company, the amount named representing the freight accruing on such shipments to the Railroad Company for transporting from San Francisco to final Eastern points, and the Steamship Company retained out of the amount so collected $2,069.25, state tolls, which it is alleged the Railroad Company under its terminal tariffs agreed to absorb, and also retained freight charges of $39.13.

[1, 2] Judgment on the pleadings for the full amount and interest

was given to the Railroad Company, and the Steamship Company brought writ of error. The question is whether the Steamship Company was entitled to offset the $2,108.38 against the amount demanded by the Railroad Company. It is accepted as of course that the Railroad Company is subject to the act to regulate commerce, and the provisions of its tariffs filed pursuant to the provisions of the act must be strictly observed, and that the Interstate Commerce Commission is without jurisdiction over ocean carriage of export and import traffic destined to or coming from nonadjacent foreign countries. Pennsylvania R. R. Co. v. International Coal Mining Co., 230 U. S. 184, 33 Sup. Ct. 893, 57 L. Ed. 1446, Ann. Cas. 1915A, 315; Cosmopolitan Shipping Co. v. Hamburg-American Packet Co., 13 Interst. Com. Com'n 266.

Section 6 of the act to regulate commerce (Act Feb. 4, 1887, c. 104, 24 Stat. 380 [Comp. St. 1916, § 8569]) provides that every common carrier subject to the provisions of the act shall file and keep open to inspection schedules showing rates and charges for transportation between different points on its own route and between points on its own route and points on the route of any other carrier by railroad or by water when a through rate and joint rate have been established; that if no joint rate over the through route has been established the several carriers in such through route shall file the separately established rates and charges applied to through transportation. The schedules shall plainly state the places between which property will be carried, and shall also state separately all terminal charges and all other charges which the Commission may require, all privileges or facilities granted, and any rules which may change, affect, or determine any part of the aggregate of such rates and charges or the value of the service rendered to the shipper or consignee. The schedules must be printed and copies kept for use of the public in such form that they shall be accessible to the public and can be conveniently inspected. The provisions of the section apply "to all traffic, transportation and facilities defined in this act."

Inasmuch as it is beyond controversy that transportation and traffic by ocean carriers engaged in transportation to nonadjacent foreign countries is not defined or included in the act to regulate commerce, it must follow that the jurisdiction of the Interstate Commerce Commission cannot extend to carriers engaged in such traffic. In Cosmopolitan Shipping Co. v. Hamburg-American Packet Co., supra, the Commission recognized the limitations upon its jurisdiction where the question of control over ocean carriers was presented, and announced that the line must be drawn decisively between those carriers whose rates and practices the Commission could control and those which it could not control, and held that joint rates could not be made between carriers subject to the act and those not subject to it. In Chamber of Commerce of New York v. New York Central & Hudson River R. R. Co., 24 Interst. Com. Com'n 55, the Commission, assuming it had no jurisdiction over ocean rates, said that rates to and from ports must be published as independent from the ocean transportation and are subject to the provision of the act to regulate commerce.

In obedience to the limitations referred to, reference may be had to rule 71 of the Interstate Commerce Commission Tariff Circular 18-A (subdivision "b"), wherein the Commission has explicitly declared that ocean carriers between ports of the United States and foreign countries not adjacent are not subject to the terms of the act to regulate commerce, nor to the jurisdiction of the Commission, and also to the provision that the inland carriers of traffic exported to or imported from a foreign country not adjacent must publish their rates and fares to the ports and from the ports, and that the rates must be the same for all, regardless of what ocean carrier may be designated by the shipper. The rule further provides that, "as a matter of convenience" to the public, the carriers of inland traffic may publish in their tariffs such through export or import rates to or from foreign points as they may make in connection with ocean carriers; but such tariffs must distinctly state the inland rate or fare as provided by the rules, and need not be concurred in by the ocean carrier, "because concurrence can be required from, and is effective against, only carriers subject to the act." Another subdivision authorized forwarding export and import traffic under through billing, but there must be separation of the liability of the inland and of the ocean carrier, and it must show the tariff rate of the inland carrier.

With the foregoing provisions making clear distinction between the liability of the inland carrier and of the ocean carrier, it would seem to be conclusive that the tariff of the Railroad Company must be limited to the field of the operation of the service performed by it, and cannot relate to liability, service, or obligation of the ocean carrier. The office of the terminal tariff is to inform the shipper and receiver of freight just what services and charges of a local nature may be made, and which are not incorporated in the tariffs of rates on the main lines. We have an illustration in the Western Pacific terminal tariff, where it is published that the road will absorb switching charges fixed at $2.50 per car, and also state toll. The main line rate provides for carrying the shipment without additional charge to the point of delivery to the connecting ocean carrier. By the terminal tariff there is notice that there will be absorption of two additional charges, the switching charge of connecting rail carriers and whatever state toll there may be as incidental to the rail haul by the rail carrier.

We think that the switching charge means the charge for delivery service of the connecting rail line and that the state toll covers the charge by the state for like service where toll may be charged as an incident to the rail haul and within the service comprehended by the Act to Regulate Commerce. This is but to say that, where the rail carrier has delivered at ship's tackle, it has completed the rail service as contemplated by the tariffs filed pursuant to the act of Congress, and from then on the service and obligations, including tolls levied by the state, are to be assumed by the water carrier transporting to a nonadjacent country, not regulated or controlled by the referred to act. The reasonableness of such a view accords with the general applicability of the act to regulate interstate commerce by confining the scope of regulations to such charges for transfer services as are within the field of

the rail carrier. Within such field the power is very broad, and the extent of the jurisdiction must be carefully observed; but things incidental to traffic not within the purview of the act are with equal care to be excluded from its provisions. The argument that the absorption of the tolls under investigation may be like taking up a drayage charge is not persuasive, inasmuch as the Interstate Commerce Commission, by its conference ruling (No. 441), has especially provided for drayage charges, in connection with through shipment; that is, charging for services by dray which the rail carrier can and does adopt as its own. We are therefore brought back to the point that a charge which the carrier cannot make as its own, as, for example, the service of an ocean ship transporting to a nonadjacent country, is not to be included as one assumed.

It is suggested by the Steamship Company that it has been the custom for the rail carrier to pay charges like those involved in this controversy. No written contract for payment is alleged, and we cannot reach a point where there is ambiguity which would permit the court to rest its decision upon a custom.

[3] Tender of payment of one part of the indebtedness having been made, interest upon the entire sum recovered was properly allowed by the District Court. Lilienthal v. McCormick, 117 Fed. 89, 54 C. C. A. 475; Donaldson v. Severn River Glass Co. (D. C.) 138 Fed. 691.

Judgment affirmed.