GULDEN et al. v. HIJOS DE JOSE TAYA S. EN C.

(Circuit Court of Appeals, Second Circuit.  May 10, 1918.)

No. 219.

1. SHIPPING ⬤➡106—BILL OF LADING—CONDITION OF CARGO.

   Where a bill of lading recited that a shipment of olives was received in apparent good order and condition, and there was no qualification, except that the vessel should not be responsible for the contents of the parcels, the admission is sufficient prima facie, in a suit for injuries to olives due to the breaking of the barrels in which they were packed, that such barrels were in good condition when received.

2. SHIPPING ⬤➡123—LIABILITY FOR DAMAGE TO CARGO—IMPROPER STOWAGE.

   A ship *held* liable for damage to olives packed in barrels, from the breaking and leaking of the barrels, on the ground that it was caused by improper stowage.

Appeal from the District Court of the United States for the Eastern District of New York.

Suit by Frank Gulden and others against Hijos de Jose Taya S. en C. From a decree for libelants (243 Fed. 780), respondent appeals. Affirmed.

Appeal from a decree in admiralty of the District Court for the Eastern District of New York (Chatfield, J., presiding), adjudging the defendants liable for injury to four hogsheads and two barrels of olives stowed upon the ship Asuarca, of which the respondents were the owners. The hogsheads and barrels, along with some 500 others, were shipped upon a vessel of the respondents from the port of Seville, Spain, bound for Cadiz, and were there transshipped to the steamer Asuarca, bound from Cadiz to New York, and arrived on the 31st of January, 1916. They were shipped under the usual bill of lading, which contained an exception for breakage, leakage, bad stowage, and the like. The bill of lading also contained the provision that the respondent should not be responsible for the contents of the packages.

When they arrived in New York and were discharged, it was found that the staves of the hogsheads and barrels in question, 6 in all, had been broken, so that the brine leaked out, and the olives had been dried and destroyed. Two witnesses for the libelants proved that they had seen the casks before they had been discharged, and that the bungs were not all upright, but that they had been stowed in various angles to the perpendicular. One witness for the respondents was called, who swore of the barrels and hogsheads as follows: "They were stowed in the bilge with their bungs up, some of them, and some of them were stowed amidships crosswise." He also swore that a breakage of 6 out of 500 would be a good cargo, and that if there had been poor stowage there would be more than 6 casks in poor shape. He was in the habit of having four or five ships discharging at a time and could not remember specifically the consignment to the libelants. The respondents also produced the certificate of the wardens of New York that the cargo had been surveyed and found to be well stowed.

The district judge found that the libelants had shown affirmatively that the ship was guilty of negligence in the stowage, and for that reason gave judgment.

Kirlin, Woolsey & Hickox, of New York City (Robert S. Erskine, of New York City, of counsel), for appellant.

Francis Bertram Elgas, of New York City (George H. Gilman, of New York City, of counsel), for appellees.

Before WARD and ROGERS, Circuit Judges, and LEARNED HAND, District Judge.

LEARNED HAND, District Judge (after stating the facts as above). [1] The appellant's first point is that the libelants have not shown that the cargo was shipped in good condition. The bill of lading recites that they were received "in apparent good order and condition," and there is no qualification to this admission, except that the ship shall not be "responsible * * * for the contents of the parcels." The appellant contends that under The Lyra (D. C.) 231 Fed. 250, and Vanderbilt v. Ocean S. S. Co., 215 Fed. 886, 132 C. C. A. 226, this qualification of the admission makes the libelants' proof insufficient. We do not agree. In both these cases, as in The Ismaele (D. C.) 14 Fed. 491, and Henderson v. 300 Tons of Iron Ore (D. C.) 38 Fed. 36, the qualifying language was "weight unknown," or "weight and contents unknown." The phrase "not responsible for contents" is not an equivalent. It affects to relieve the ship for the condition of the contents; but the contents are not here in question, at least not its condition at the time of shipment. The material question is of the condition of the hogsheads themselves, since the proof makes it clear that the condition of the contents resulted from the injury to them, and, if they were sound when shipped, so were the contents. ·

Admitting that the hogsheads were apparently in good order, the condition of the contents at that time necessarily followed. The exception touching the contents did not qualify that admission at all, assuming, indeed, that it qualified the existing quality of the contents in any event.

[2] The case therefore turns simply upon whether the libelants succeeded in proving bad stowage. That is a question on which we are not disposed to disturb the ruling of the District Judge, who saw the three witnesses concerned. It is true that the two witnesses for the libelant did not go down into the hold; but they saw the cargo from the deck before it was discharged, and they testify absolutely that some of the bungs were not upright, which is conceded by both sides to be bad stowage, and the only thing in contradiction is the certificate of the port warden, upon which we think the District Judge properly laid small weight, and the testimony of Leisegang, whose recollection was obviously uncertain, and whose testimony we do not feel to be wholly unambiguous, even if taken literally.

The main strength of the respondent's position really lies in the fact that so few of the casks were injured; but, while the stowage of casks with bungs at an angle to the perpendicular was improper, we cannot say that it inevitably involved a crushing in of the staves whenever it is practiced. Whether these hogsheads were of unusual strength, or whether it is only in a small percentage of cases that bad stowage will result in breakage, we do not know. There is no evidence in the case which would excuse the respondent, upon the theory that bad stowage must have resulted in a higher percentage of injury. Moreover, although the witnesses for the libelants do say that many of the casks were improperly stowed, they do not profess to give the number. Out of the 600 we have no means of knowing whether 20 per cent., or more or less, were badly stowed.

Seeing no reason to disturb the finding of the District Judge on this question of fact, we think the decree should be affirmed.