### KUHNHOLD v. NETHERLANDS-AMERICAN STEAM NAV. CO. et al.

(Circuit Court of Appeals, Second Circuit. February 18, 1920.)

#### No. 104.

1. Shipping ⊜⟞132(5)—Delivering carrier liable for damages to cargo.

Decree against the delivering carrier for damage to cargo, receipted for by a preceding carrier in good condition, *held* sustained by the evidence and presumption, in the absence of any effective exemption in the through bill of lading or proof of injury by a preceding carrier.

2. War ⊜⟞10(2)—Dismissal as to absent German respondent should be without prejudice.

Where a libel for damage to cargo against two carriers, one of which was German, is dismissed as to such respondent because of its absence caused by the war, the dismissal should be without prejudice to any rights of libelant or its correspondent.

Appeal from the District Court of the United States for the Southern District of New York.

In Admiralty. Suit by William Kuhnhold against the Deutsch-Australische Dampschiffahrts Gesellschaft and the Netherlands-American Steam Navigation Company. Decree for libelant against the Netherlands Company, and it appeals. Modified.

This suit, for injury to cargo consigned to libelant, was begun in 1916, against not only the present appellant, but the Deutsch-Australische Dampschiff Gesellschaft (hereafter called the German Line). It alleged the delivery

⊜⟞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

to both respondents of certain goatskins at Marseilles, and their joint undertaking to transport the same by the Iserlohn to Rotterdam, and by the Soestdyk thence to Philadelphia; also the issuance of a bill of lading acknowledging receipt in good order, and alleged delivery in a damaged condition.

Netherlands Company answered, and admitted the issuance of a bill of lading and an agreement by it to carry pursuant to the terms thereof, but averred that the skins were damaged when delivered to it, and were received at Marseilles in bad order.

The German Line appeared, but never answered; when the case came on for trial, this country was at war with Germany, the German corporation was not represented in court, and the trial judge sua sponte dismissed the libel as to the German Line, because "there was no proof of contract" with it.

The facts shown were that the goods did go from Marseilles to Rotterdam on the Iserlohn of the German Line and were there transhipped to the Soestdyk, belonging to Netherlands Company. There was no evidence that the skins were injured either in loading or when received by the Soestdyk, and the only bill of lading issued, and the one under which both steamers carried the goods, was a form of the appellant, entitled "Through Bill of Lading to Philadelphia, via Rotterdam, by the Steamers of" the Netherlands Company. It specifically acknowledges receipt in good order at Marseilles, states an intent to transport by Iserlohn to Rotterdam and thence by Soestdyk to Philadelphia, nowhere mentions the German Line, and declares: "The transportation from the point of shipment to Rotterdam is subject to * * * all the exceptions stipulated by the contract * * * of the * * * company delivering the goods;" also that "the responsibility of the carriers shall be limited to their own line." It concludes with the statement that it is signed "on behalf of the first and of each succeeding carrier on the route to destination, but each carrier is bound only in respect of the transportation over its own line," and bears the signature, as "Agents," of a firm of Marseilles, which was not Netherlands Company's agent, and did represent the German Line.

The transaction, admittedly singular, was explained only to the extent of an experienced freight clerk from the Netherlands Company, testifying that against the bill of lading of his company the Marseilles shipper could draw, and negotiate his draft with bankers; hence he supposed (his testimony goes no further) the German Line had used the bill of the delivering carrier.

The skins were wet. The libel contained an allegation that the wetness came from their being dropped overboard in Marseilles harbor by the Iserlohn. There was no proof of this, nor any explanation of how, when, or where injury occurred.

Decree was for libelant, and on this appeal the errors assigned are in substance that (1) on such pleadings appellant was held at all; (2) libel was dismissed as against German Line; (3) more than nominal damages were awarded.

Burlingham, Veeder, Masten & Fearey, of New York City (G. Noyes Slayton, of New York City, of counsel), for appellant.

Theodore L. Bailey, of New York City, for appellee.

Before ROGERS, HOUGH, and MANTON, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). [1] It is quite likely true that this bill of lading was issued by mistake, fraud, or ignorance. But such speculation is immaterial, for the Netherlands Company has always admitted that it carried the skins thereunder from Rotterdam to Philadelphia, and it is apparent that no other shipping document exists covering transportation from Marseilles to Rotterdam.

There is no plea or proof of fraud, and the most favorable view of the matter for appellant is to regard the bill as if it were what it ought to have been, and was perhaps ignorantly intended to be—a

264 F.—21

through bill issued by the German Line, and providing for delivery to the appellant as a connecting carrier at Rotterdam. So read, it is a very ordinary document.

Considering the paucity of evidence, which must have been apparent long before the much-delayed trial occurred, we think that this litigation has grown out of the unnecessary allegation of the libel that the skins fell into Marseilles harbor. At trial this was disregarded, and libelant relied on legal presumptions, which were and always had been obvious enough.

The trial court was clearly right in not tying libelant to his allegation of time and place of injury. The substantive facts of shipment, contract, transportation, and some damage were alleged, and after that the rule of The Gazelle, 128 U. S. 487, 9 Sup. Ct. 139, 32 L. Ed. 496, applied; there was no surprise, and inaccuracy as to subordinate facts does not prevent appropriate relief.

Treating the bill of lading as above indicated (which is what appellant now contends for), there is nothing to overcome the effect of the receipt in good order (Gulden v. Hijos, etc., 252 Fed. 577, 164 C. C. A. 493); nor is there anything to rebut the presumption of fact that "goods * * * delivered in good condition remain so until they are shown to be in bad condition, which happens only on their delivery" (per Holmes J., Moore v. N. Y., etc., R. R., 173 Mass. 335, 53 N. E. 816, 73 Am. St. Rep. 298; for fuller statement see Moore on Carriers [2d Ed.] vol. 2, p. 776).

Therefore the mere fact of damage, existing on delivery, threw on the delivering carrier the burden of either showing that a good exception covered the kind of injury existing, or that the hurt had been inflicted by a preceding carrier; this has not been done.

Complaint regarding the award of damages is, we think, ill founded. The skins were not examined for some 10 days after delivery; they were in bales, and were wet on the inside; the outside had been wet, but had dried. Their condition was not due to sweat, which was an excepted risk. There was evidence that they had been shipped perfectly dry. We think this, if believed, was prima facie proof.

[2] The dismissal in usual form of the libel as against the German Line was, we think, error. What prevented trial of the case as to that respondent was the war, and some contract is inferable from the proved fact that the German ship carried the skins to Rotterdam. The form of dismissal may be taken as prejudicial to the Netherlands Company's probable right to exoneration.

The decree is modified, by directing that the libel be dismissed as to the German Line without prejudice to any rights the libelant or Netherlands Company may have as against that respondent, and, as so modified, is affirmed, with interest and costs.