## THE COMMERCIAL GUIDE.

District Court, E. D. New York. January 18, 1928.

No. 8440.

1. **Shipping ⊚➠132(3¼)—In action for damage to cargo of slate, burden held on carrier to explain and excuse damage.**

In action by shipper for damage to cargo of slate, where no proof was offered on behalf of ship to show that packages were insufficient or that damage was within exception of bill of lading, burden rested upon carrier to explain and excuse damage.

2. **Shipping ⊚➠106(3)—Terms of both railroad and ocean bills of lading form part of contract of carriage, and bind both parties.**

In action by shipper for damage to cargo, the terms of the railroad bill of lading and of the ocean bill of lading form part of contract of carriage, and bind both parties.

3. **Shipping ⊚➠142—Requirement in ocean bill of lading that shipper give notice of claim for damages within 10 days after ship has finished discharging is reasonable and valid.**

Provision of ocean bill of lading requiring shipper to give notice of claim for damages within 10 days after ship has finished discharging is a reasonable and valid stipulation, not inconsistent with sound public policy.

4. **Shipping ⊚➠142—Carrier must not only be apprised of damage to cargo, but must also be notified of shipper's intention to hold it liable.**

Though ocean bill of lading did not require shipper's notice of claim for damages to be in writing, it was not sufficient that carrier be apprised of the damage, but it also must have been notified of intention to hold it liable.

5. **Shipping ⊚➠132(5)—Evidence held to show that carrier was apprised of damage to cargo and of shipper's intention to hold it liable therefor.**

In shipper's action for damage to cargo, evidence *held* to show that carrier, through its agents, was given notice, not only of damage to cargo, but also of shipper's intention to hold carrier liable therefor.

In Admiralty. Libel by Simeon M. Rising and others, doing business as the Rising & Nelson Slate Company, against the steamship Commercial Guide, her engines, etc.; the Nyanza Steamship Company, Limited, claimant. Decree for libelants.

Haight, Smith, Griffin & Deming, of New York City (Herbert K. Stockton, of New York City, of counsel), for libelants.

Kirlin, Woolsey, Campbell, Hickox & Keating, of New York City (Earl Appleman, of New York City, of counsel), for claimant.

CAMPBELL, District Judge. This is a cargo damage suit. The cargo in question, consisting of 460 bundles containing 81 squares of slate in each bundle, was shipped by the libelants by rail over the Delaware & Hudson Company Railroad, at West Pawlet, Vt., on November 15, 1922, to D. E. Fryer, Seattle, Wash., and, pursuant to the terms and conditions of said bill of lading, the said cargo of slate was, on November 27, 1923, at New York City, transshipped to the steamship Commercial Guide, of which Moore & McCormack Company, Inc., was general agent.

Between January 20 and 24, 1924, the said steamship Commercial Guide arrived at Seattle, Wash., and discharged the said cargo of slate, much of it being in a badly damaged condition.

The good order and condition of the slate on delivery to the railroad car in shipper's yard was proven, and a clean receipt was received from the railroad.

The good order and condition of the slate alongside the steamer is shown by the clean receipt of the steamship company to the railroad.

The slate was packed by the Signode method, instead of being packed in crates, and the sufficiency of package was proved by libelants' witnesses, as it seems clear to me that the method used was safer than the method of packing in crates.

[1] No proof was offered on behalf of the ship to show that the packages were insufficient, and the claimant has not brought the damage within any exception of the bill of lading. The burden therefore rested upon the carrier to explain and excuse the damage, and the libelant was not bound to point out the ship's negligence in the care and custody of the cargo. Littlejohn v. Ellerman, 1927 A. M. C. 161; Kuhnhold v. Netherlands-American Steam Nav. Co. (C. C. A.) 264 F. 320, 322; The Rosalia (C. C. A.) 264 F. 285; Compania Naviera Mexicana v. Sporl (C. C. A.) 11 F.(2d) 777; The Folmina, 212 U. S. 354, 361, 363, 29 S. Ct. 363, 53 L. Ed. 546, 15 Ann. Cas. 748.

[2, 3] The claimant rests heavily on the alleged defense of failure on the part of the libelants to present claim.

Not only the terms of the railroad bill of lading, but all the terms of the ocean bill of lading, form part of the contract of carriage and bind both of the parties, and article 13 of the ocean bill of lading reads as follows:

"13. Also the carrier, ship, or representative shall not be liable for negligence or otherwise, as carrier, bailee, or otherwise, for any claim or demand for short delivery of, or

damage to, the property hereby receipted for, unless presented within ιten days after the ship has finished discharging, to the master of the ship or the ship's agent at port of discharge, nor for any other claim or demand hereunder, or for or in respect of the said property or the care, carriage, delivery, or disposition thereof, unless presented in writing to the carrier or its agent at port of shipment or port of discharge, within ninety days from the issuance of this bill of lading."

The first portion, providing for giving notice of claim within ten days after the ship has finished discharging, is applicable to this case, and is a reasonable and valid stipulation, not inconsistent with sound public policy. The General G. W. Goethals (D. C.) 298 F. 935; The Lake Gaither (D. C.) 21 F.(2d) 83.

Clauses requiring notice in less than ten days have been held valid. Persiana (C. C. A.) 185 F. 396; The St. Hubert (C. C. A.) 107 F. 727; The Susquehanna (C. C. A.) 296 F. 461; The Sagadahoc (D. C.) 291 F. 920; The Hesione, 1927 A. M. C. 1660; The Verdi (C. C. A.) 282 F. 572.

The Commercial Guide finished discharging by January 24, 1923.

[4] The notice of claim was not required to be in writing, but it was not sufficient that the carrier be apprised of the damage, but it must also have been notified of the intention to hold it liable. The Westminister (C. C. A.) 127 F. 680; The San Guglielmo (C. C. A.) 249 F. 588; The Hesione, supra.

[5] Although neither Mr. Brooks nor Mr. Fryer could give the name of the man with whom they examined the slate on the pier, and to whom they gave notice of claim, and not only of the damage but of their intention to hold the carrier for damage, such man was found by them in the office on the pier of Walker-Ross, Inc., who on the trial were shown to be the agents of the ship at Seattle.

That the man with whom they dealt was a representative of Walker-Ross, Inc., seems to be apparent from all that followed. That Mr. Fryer had a conversation over the telephone with some one in authority in Walker-Ross, Inc., as testified by him, although he could not give the name of the person, is shown to be beyond question by the letter addressed to Messrs. D. E. Fryer & Co., by Walker-Ross, Inc., dated January 23, 1923. That Mr. Fryer wrote a letter to Walker-Ross, Inc., on January 24, 1923, as testified by him, clearly appears from the letter of Walker-Ross, Inc., to Messrs. D. E. Fryer & Co., attention of D. E. Fryer, dated January 26, 1923.

The letter last mentioned and the letter dated January 29, 1923, written by Walker-Ross, Inc., to Messrs. D. E. Fryer & Co., attention of Mr. Fryer, clearly show that a claim had been made, and that Walker-Ross, Inc., rejected the same.

The testimony of Mr. Brooks and Mr. Fryer, taken by deposition, coupled with the letters, convinces me that a claim was made by D. E. Fryer & Co. before January 29, 1923, within ten days after the ship had finished discharging her cargo, and that D. E. Fryer & Co. were the agents of the libelants, vested with authority to make the claim.

The statement of Brooks and Fryer, on cross-examination, by deposition, that they never filed a claim, of which the claimant makes much of a point, seems from all of their testimony clearly to mean that they never filed a written claim, but simply presented an oral claim, leaving to the libelant the prosecution thereof.

A decree may be entered in favor of the libelants, with costs, and the usual order of reference.