## Case No. 2,314.

### The CALIFORNIA.

[2 Sawy. 12;[1] 5 Am. Law T. Rep. U. S. Cts. 132.]

District Court, D. Oregon. April 17, 1871.

BILL OF LADING—EFFECT OF ADMISSION IN.

The admission in a bill of lading, "shipped in apparent good order and condition five cases of merchandise, value and contents unknown," has reference to the external condition of such cases; and it excludes the inference that the carrier thereby admits anything as to the quantity or quality of the contents of the cases at the time of delivery, beyond what is visible to the eye or apparent from handling the same.

[See note to Case No. 2,286.]

In admiralty.

John W. Whalley and H. T. Bingham, for libellants.

Joseph N. Dolph, for claimant.

DEADY, District Judge. This suit is brought by the libellants, Philip and Louis Levin, to recover the sum of $931 damages, for the non-delivery of a case of merchandise.

The libel alleges that on September 9, 1870, the libellants shipped at the port of San Francisco, on the steamship California, five cases of merchandise in good order and condition, to be delivered at the port of Portland, in like order and condition, and that one of said cases containing one bolt of sheeting, three coverlids, kid gloves, ladies' hose, neck-ties, velvet ribbon, etc.. was never delivered.

The claimant, the North Pacific Transpor-

---

[1] [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission.]

tation Co., by its answer admits that the case in question was shipped on the California "in apparent good order and condition, value and contents unknown," and avers that it was duly delivered to the libellants, in like order and condition.

On the hearing it appeared that the case was delivered by the vessel on the wharf at Portland, on September 13, and taken from thence in a few hours to the store of the libellants, where it was, at the suggestion of the drayman, at once opened, and found to contain nothing but a bolt of sheeting, some coverlids, ladies' hose, and empty paper boxes, whereupon it was immediately returned to the vessel. The case was about three feet by two in size, and a second-hand one, such as it was usual to pack dry goods in for carriage between San Francisco and Portland. When delivered to the libellant's drayman, at Portland, externally it was in good order and condition, except that in handling it the drayman observed that it was light, and that the contents appeared to fall from side to side, as though it was not full. The fact that it was light is not material, as it was common for like cases, containing light goods, such as bonnets and the like, to be carried on the steamers between San Francisco and Portland.

The libellants gave evidence tending to prove that the articles described in the libel were purchased by one of them in San Francisco and packed in this case at the store of Marcus Levi, and then put upon a truck to be hauled to the dock where the California was lying, and that the case was subsequently delivered to the vessel, but there was no direct evidence that the case was in the same condition as to quantity and quality of contents when it was delivered to the vessel, as when it left the store of Levi. At the time there was more freight offering for this port than the steamer could carry, and consequently there was an effort among shippers to get their freight upon the dock early. On this account it was common for drays to remain in line outside the dock with freight as long as twenty-four hours. The vessel was loaded in a day, and sailed on the morning of September 10, and it is quite probable from the evidence that the case left the store of Levi on the 7 or 8, and was not delivered upon the dock until the morning of the 9. If so, during this time it remained upon the truck in charge of the drayman. The testimony of this drayman has not been produced, nor any excuse or reason given for not doing so.

Admitting that the goods were in the case when it left Levi's—which is not beyond doubt—and that they were taken out and the case nailed up again between that place and the wharf, at Portland, there is just as much reason to believe that the embezzlement or robbery took place while the case was on the truck, and before it was delivered to the ship, as afterwards.

To say the least the evidence leaves it in doubt whether the goods were delivered to the ship or not. The burden of proof as to the delivery being upon the libellants, they cannot recover unless this fact is established with reasonable certainty. The fact that the best evidence upon this point—the testimony of the drayman—is not produced, nor the omission excused or accounted for, is a circumstance which deepens the doubt about the delivery of the goods, and even casts suspicion on the good faith of the libellants' claim for loss. Under these circumstances the proof must be direct and convincing, to satisfy the mind that the delivery took place as alleged.

Waiving this point, counsel for libellants insist, however, that the admission in the bill of lading is sufficient to charge the ship with the receipt of the goods. The clause relied on is as follows: "Shipped in apparent good order and condition. * * * Five (5) C. Mdse * * * value and contents unknown." It being admitted or shown that the letters Mdse stand for merchandise, counsel contends that this is an admission, not only that the case contained merchandise, but that it was of the quantity and quality claimed by the libellants. In support of this position he cites Price v. Powell, 3 Comst. [3 N. Y.] 325. This authority holds that when a bill of lading was given for a box of marble tomb-tops "in good order and well conditioned," the burden of proof is upon the carrier to show that the marble was broken before it came to his hands. The case is not in point. There was a direct admission that the specific articles alleged to have been shipped were in the box and in good order.

The rule of law is well established; that the words in a bill of lading, "in good order and well conditioned," have reference to the external condition of the package, and do not refer to or warrant the internal quality or condition thereof; and when the words "value and contents unknown" are contained therein, they exclude the inference of any admission by the carrier as to the quantity or quality of the contents of the package at the time of delivery, beyond what is visible to the eye or apparent from handling the same. Bradstreet v. Heran [Case No. 1,792]; The Columbo [Id. 3,040]; Clark v. Barnwell, 12 How. [53 U. S.] 283; Abb. Shipp. 339.

The loose condition of the contents of the case when taken by the drayman from the wharf; and the reasonable inference therefrom, that it was not then full, is also relied upon by counsel for libellants as showing that the case was not delivered in apparent good order and condition, and that therefore the burden of proof is thrown upon the claimant to show that the case was not full when received, or what has become of the missing portion of the contents. At first blush there appears to be force in this

argument, and in some cases and under other circumstances, it would be probably satisfactory. But upon reflection, I am pretty well satisfied that .the mere fact of the contents of a dry goods box, represented to contain merchandise, being loose or not sufficient to fill the box, is not inconsistent or at variance with an admission in a bill of lading that the box was in apparent good order and condition when shipped, especially when the bill of lading also contains, as in this case, the declaration—value and contents unknown.

The proof not being sufficient to establish the fact that the goods alleged to have been lost from the case in question, were ever received by the vessel, the libel must be dismissed with costs.

Decree accordingly.