# SUPPLEMENT.

### HIRAM D. RELYEA vs. THE NEW HAVEN ROLLING MILL COMPANY.

The owner and master of a vessel signed a bill of lading for a certain number of tons of iron, upon the representation of the consignors that the weight was correct. The consignors sent the bill of lading, with a bill for the iron to the consignees, who after the vessel arrived and before the cargo was discharged, remitted the amount of the bill to the consignors, supposing it to be correct. After the iron was discharged and weighed it was found to fall short several tons, and the consignees refused to pay the freight. Upon a libel against them for the freight, it was held—1. That the libellant was concluded by the representations of the bill of lading, as against the consignees. 2. That the consignees might recoup in the suit the amount of their loss, not exceeding the amount claimed for freight.

As between the shipper and the ship owner the receipt in a bill of lading is open to explanation; but it is otherwise where the consignee is deceived by it, and the master knew, or had the means of knowing, that its statements were incorrect.

It was the duty of the master in this case to have ascertained the true weight or to have refused to sign a clean bill of lading.

LIBEL for freight money; tried in the United States District Court for the District of Connecticut, August Term, 1873. The facts of the case are sufficiently stated in the opinion.

*C. R. Ingersoll*, for the libellant.

*J. T. Platt*, for the respondents.

SHIPMAN, J.[*] This is a libel *in personam* in favor of the owner and master of the sloop Carver to recover freight money from the respondents. On or about the 8th day of August, 1872, Pettee & Mann engaged the libellant to transport in his sloop a cargo of scrap iron from New York to New Haven. The iron was weighed upon the wharf at New York, and delivered on board the vessel by Pettee & Mann. The cap-

---

[*] Hon. Nathaniel Shipman was appointed judge of the court on the 1st of May, 1873, in place of Hon. William D. Shipman, who resigned.

tain, on August 8th, 1872, signed three bills of lading, whereby he acknowledged to have received on board the sloop one hundred and nine tons and a specified fraction of a ton, and agreed to deliver the same to the respondents at New Haven, or to their assigns, he or they paying freight at the rate of $2.25 per ton of 2,240 pounds. The captain demurred to signing the bills of lading, as he had not seen the iron weighed, but finally signed them upon the assurance of Pettee & Mann that the quantity was correctly stated.

On the same day the consignors sent by mail to the respondents one of the three bills of lading, and a bill of the iron at $62.50 per ton. This letter was received before the vessel arrived.

The vessel and cargo reached New Haven about the 10th of August. There was a delay of three or four days in discharging, in consequence of the respondents' dock being pre-occupied, but the vessel was discharged on the 17th. On the 16th the respondents paid Pettee & Mann in accordance with the quantity stated in the invoice and the bill of lading. On the 17th, when the iron was entirely discharged, the respondents discovered a deficiency of about six tons, and refused to pay for the freight. The libellant delivered all the iron that was put on board his vessel, and which amounted to one hundred and three tons. It is fairly to be inferred that the consignees would not have paid Pettee & Mann until the weight of the iron had been ascertained, had they not relied upon the positive statement of the bill of lading.

The question of law in the case is, whether the consignees, who have advanced money on the faith of a clean bill of lading signed by the master and owner of a vessel, and have been injured thereby, can recoup in an action for freight money brought by such master, so much of their loss as does not exceed the libellant's claim for freight.

It is well settled that as between the shipper and the shipowner the receipt in the bill of lading is open to explanation. But the point here is, whether the master and owner are concluded by positive representations as to third persons who have relied upon such statements and have suffered loss thereby?

Since the case of *Lickbarrow* v. *Mason*, 2 T. R., 63, it has generally been considered as settled law, that a bill of lading is a *quasi* negotiable instrument, and when goods are sold by the consignees " to arrive," and the bill of lading is endorsed to the purchaser, who receives the same in good faith, that the consignor's right of stoppage *in transitu* is lost.

The custom of merchants upon a sale of goods which have not arrived is, to deliver the bills of lading to the purchaser, which pass from successive vendor to vendee, and thus become a muniment of title of great value. In such case, the only evidence which the purchaser has of the quantity of goods which he has bought, may be the statement of the master in the bill of lading. This declaration is oftentimes the only source of information upon which the purchaser can safely rely.

It then becomes the duty of the master to see to it that innocent purchasers are not deceived by his incorrect or uncertain representations. In case purchasers are deceived, a corresponding legal liability should be imposed upon him to make good the loss which he has caused. Had the New Haven Rolling Mill Company sold the iron while in transit, and had the purchaser, relying upon the representations of the bill of lading, paid for the full amount therein stated, there can be little doubt that the master, being also the owner, would have been considered bound by his statements, at least to the extent of his freight money.

I see no reason why his liability should be diminished when the person who is deceived is the consignee named in the bill of lading. If the consignee has not been misled, and has not suffered loss in consequence of the bill of lading, he has no cause of complaint. But if it is found that a loss has been suffered, and that such loss happened through a reliance upon an erroneous bill of lading, there is no just reason why the person whose negligence has immediately caused the injury should not also bear the loss.

To this effect is the decision of Judge Nelson, in *Bradstreet* v. *Heran*, 2 Blatchf. C. C. R., 116. This was a libel *in personam* by the master to recover freight on cotton shipped from

New Orleans to New York and consigned to the respondents. The court say: "The consignees made large advances upon the cotton, on the faith of the representation in the bill of lading that it was shipped in good order. They are justified in doing so, and their security 'should not be lessened or impaired by permitting the master to contradict his own representation in that instrument. It might be otherwise if the question arose between the master and the owner of the cotton. The question of damage might in that case be well limited to that accruing in the course of the voyage, notwithstanding the bill of lading. But the respondents stand in the light of *bonâ fide* purchasers, who became such on the faith of the representation of the master."

In case of *Sears* v. *Wingate*, 3 Allen, 103, the court hold that the master and owner is bound by the representations in the bill of lading, when the consignee is deceived thereby, provided the statements are those which the master knew or ought to have known were erroneous, and the incorrectness of which he had the means of discovering.

Here the cargo was weighed upon the dock at New York. It is not probable that the master, unless exceedingly diligent, could have verified the accuracy of the weights, or have ascertained the truth or incorrectness of the representations made to him by the consignors. But in my opinion it was his duty either to have ascertained the true weight, or to have refused to sign a clean bill. The master, when he ignorantly signs a bill of lading, whereby he undertakes to deliver a specified quantity, is always in danger of misleading a third person. It is incumbent upon him to avoid that danger, by refusing to sign a bill unless he is satisfied of the accuracy of its contents.

It is claimed by the libellant that the hundred and three tons were accepted, and that the freight money is therefore to be paid. It is true that there was an acceptance, and that the respondents are liable for the freight money. But they have nevertheless a right to recoup against this claim for freight, the damage which they have sustained in consequence of the fault of the master in the same transaction which is the subject of the suit; but such recoupment cannot be to an extent beyond the amount claimed for freight.

The respondents can prosecute this claim for damage, either by an independent suit or libel, or they can by recoupment "seek to diminish or extinguish the libellant's just claim." *Kennedy* v. *Dodge*, 1 Benedict, 315; *Nichols* v. *Tremlett*, 1 Sprague's Decis., 367.

The libellant was also entitled to a small sum for demurrage, but as the price of the six tons of iron was greater than the amount of the freight money and demurrage, the libel must be dismissed.