By the Court.—Sedgwick, Ch. J.
On December 1, 1831, the defendants made written application to plaintiff’s agent in New York. It was as follows : “December 1, 1881, Please telegraph authority to Vogel & Co., Hong Kong, to draw at six months, for our account, against consular invoice and full set bills of lading of 2,500 bales manila hemp, p. Eobinson, at the rate of £4 per bale, pn a basis of 8s. sterling, freight filled up in bill of lading reducing advance if freight higher.”
In the evening of that day, the plaintiff’s agent sent to Vogel. & Co., the following telegraphic dispatch: “ Vogel, Hong Kong. Credit 608, six months, issued Becknagle ten thousand pounds, documents 2500 bales manila hemp, *347 per Robinson, at £4 per bale, if freight eight shillings or reduced advances if freight higher.”
On the next day, December 2, 1881, a letter of credit was made out and delivered to defendants. It was dated December 1, 1881, and addressed to the agents of the plaintiff in London. It authorized Messrs. Vogel & Co., of Hong Kong, “ to value on you as follows, that is to say, against goods, shipped per Robinson, via Cape of Good Hope, at six months sight; for any sum or sums not exceeding in the aggregate £10,000 sterling, to be used as they may direct, for invoice cost of 2,500 bales of manila hemp at £4 per bale, on a basis of 8s. sterling freight filled up in bill of lading, or at a proportionate reduced rate of advance if the freight is higher, to be purchased for account of Recknagle & Co., New York, or whom it may concern and to be shipped to New York. . . The bills must be drawn in Hong Kong prior to the 1st day of June, 1882, and advice thereof given to you in original and duplicate, such advice to be accompanied by bill of lading, filled up to order of agents of the Bank of Montreal, New York, with abstract of invoice indorsed thereon, for the property shipped as above. All the bills of lading issued except the one mailed to us and the one retained by the captain of the vessel carrying the cargo, are to be forwarded direct to you. The original invoice, properly certified, to be also forwarded to us. . . And we hereby agree with the drawers, indorsers and bona fide holders of bills drawn in comph'ance with the terms of this credit, that the same shall be duly honored on presentation at your office in London.” To this was added a note, “ Please sign bills as drawn under Credit No. 608, dated December 1, 1881.” On the margin was written : “This credit opened by cable direct, December 1, 1881.”
This letter of credit was delivered to the defendants, and they by letter addressed to plaintiff’s agents in New York, and dated December, 1881, agreed “to provide for all bills which shall be drawn and accepted under ” the let *348 ter of credit “ by payment of the amount thereof to you in New York.”
The letter of credit was sent to Vogel & Co., on December 13, 1881. It was not sent before, because the first China mail from New York went on that day.
Vogel & Co., in Hong Kong, drew three bills, upon plaintiff at London, at six months, to their own order—the first, on December 3, was for £2,400; the second, on December 6, for £2,000 ; the third, on December 13, for £3,680. On the face of the drafts it was respectively stated that they were drawn against six hundred, five hundred, and nine hundred and twenty bales of manila hemp.
These drafts were forwarded to plaintiff’s agents in London. The draft for £2,400 was accompanied with a bill of lading for six hundred bales of merchandise ; that for £2,000, with a bill of lading for five hundred bales of merchandise ; and that for £3,6S0, with two bills of lading for nine hundred and twenty bales of merchandise. Each draft was accompanied with a letter of advice, describing the shipment referred to in it as of “ bales of hemp.” On each bill of lading was indorsed what were called abstracts of invoicés, and which described the shipment as of “manila hemp.” These indorsements were made by Vogel & Co. after the bills of lading had been signed and delivered to them by the captain, and without his knowledge or consent.
The bills of lading acknowledged the shipment of “ bales merchandise being marked and numbered as in the margin,” “weight and contents unknown.”
The plaintiff’s agents, upon the arrival of the ship in New York, delivered the documents that had accompanied the drafts, upon acceptance in London, to the defendants in trust. They gave a receipt which termed the property, “two thousand and twenty bales hemp.” They entered the goods at the custom-house and paid the duties, before inspecting the goods. In fact, there was of hemp in the various shipments, only five hundred bales. It is agreed that this accompanied the bill of lading for the draft of *349 December T, for £2,000. All the other packages were of matting—an article of much less value than manila hemp.
The judge found, on the evidence before him, that “a roll of matting is a round cylindrical bale or roll, weighing about forty-five or fifty pounds and covered with a grass mat. A bale of of manila hemp, weighs, within a few pounds of three hundred, is square, like a cotton bale, and of not much less size. It is not covered by any matting or other covering. It is compressed and very hard, and strings of manila hemp are laid round it, as fastenings. On each bale of manila hemp, a patch is sewed, on which to put the mark; otherwise it has absolutely no covering.”
The matting was sold by agreement, and the proceeds of sale were about $2,000.
The plaintiff claims that the defendants are liable, under their agreement, for the amounts paid upon the acceptances of £2,400 and £3,080, and the complaint asks judgment for those amounts, together with judgment that certain security given by the defendants be sold, etc.
The defendants claim that their liability under their agreement is “to provide for all bills which shall be drawn and accepted under” the letter of credit, and that the drafts upon which the plaintiff now claims were not drawn and accepted under that letter; because, first, the bills were drawn under the telegraphic despatch, and, second, the plaintiff, in accepting the bills, did not observe the conditions upon which the defendants were to become liable, under either the telegraphic dispatch or the letter.
I am of the opinion, that the various instruments, that is, the original request of the defendants, the telegraphic despatch induced by it, sent to Hong Kong, and the letter of credit, have such intrinsic or expressed reference to each other, that they must all be considered at one time, to know the agreement.
It appears from them, that defendants’ responsibility to plaintiff was not to be based upon the nature of the relation between Vogel & Co. and the defendants, or the *350 interest of the defendants in the hemp, but upon the character of certain instruments. If the instruments had the character described in the agreement, there was liability, otherwise, none. It is immaterial that Vogel & Co. committed the fraud of shipping matting and not hemp; for, assuming that they were agents of defendants, the agreement was that the acceptance and payment of the drafts should not create responsibility on the defendants’ part, unless the documents were of a certain kind. There was provision, in substance, for a protection of defendants against the acts of their agents, if Vogel & Co. were agents.
It is clear that the document most important to the interests of both parties was to be the bill of lading. There might be a controversy as to whether the letter of credit required that a consular invoice should accompany the draft; but it and the despatch and the written request, call for a bill of lading, The request refers to “bills of lading of 2,500 bales of manila hemp.” The despatch includes bills of lading when it refers to “ documents 2,500 bales of manila hemp.” The letter of credit requires the delivery of “bill of lading . . for the property ship-. ped as above; ” that is, the 2,500 bales of manila hemp mentioned above. And in truth, all the other documents—the invoice, the consular copy of it, the letter of advice—were of inferior importance, because they were of such slight import as to the fact of hemp being shipped and not something else.
The important question is, what kind of a bill of lading was intended by the parties ? At the present point of time, the interest of the plaintiff is to make the kind of bill less stringent than the defendants now insist upon. When the contract was made, it was the interest equally of both parties, to have the bill of the utmost significance practicable, as to the assurance from it that hemp was the article shipped. They evidently, as the learned counsel for appellant claims, referred to the contingencies of *351 actual shipment, and not to such a bill of lading as a master would have the right to refuse to sign.
The respondents do not claim that.they were not to be liable if in fact hemp was not shipped, without regard to the character of the bill of lading. They do claim that the bill should specifically refer to the shipment as one of manila hemp.
Both parties desired a bill of lading that it was possible for a shipper to procure' if he shipped hemp. And they wished it be of such a kind as from its effect as evidence, and its guaranties of certain rights in an action against the master, the owner, or the ship, would lessen the chances that the shipment might be something other than hemp. In other words, the bill of lading was to be such as a shipper of hemp, using his legal rights under the law merchant, according to the custom of merchants, could procure, and which, on its face, would show, as far as possible, as against the shipper and the master, that the shipment was of hemp. The right of the shipper would be correlative to the right of the master to limit responsibility under the bill to a lawful extent.
It was suggested that bills of lading seldom referred to the quality of the shipment. Oases reported, however, show otherwise. The old form in" Abbott on Shipping (ed. of 1856, 235), is a bill of lading for “twenty bales containing one hundred pieces of broadcloth marked and numbered per margin.” Smith Mercantile Law, 376, repeats this form. The Oolumbo (3 Blatch. 521) refers to a bill of lading of casks “ containing bristles.” The Bellona (4 Ben. 503) refers to a bill of lading that described the shipment of “ boxes of raisins.” Lebeau v. Gen. Steam Nav. Co. (8 L. R. C. P. 88), contains a bill of lading of “linen goods.” Fassett v. Ruark (3 Ann. La. 694) concerned a bill of lading for “thirty-three bales and twelve cases domestics.”
Much does not seem to be said in the books specifically of a right of a shipper to have the quality of the goods shipped described in the bill of lading, but the principles *352 given as to the rights of the master to limit responsibility, imply much on this subject.
In Abbott on Shipping, 252 (ed. of 1856), is a statement of the law that implies that a shipper has a right to some sort of description of the quality, if that quality can be known by the master. “If there is any dispute about the quantity or condition of the goods, or if the contents of casks or bales are unknown, the words of the bill of lading should be varied accordingly.
“By the French ordinance it is required that bills of lading should contain the quality, quantity and marks of the merchandise, &c. It is obvious that the quality, and frequently also the quantity of the goods, must be unknown to the master ; and the commentator (Valin) on the ordinance informs us that by the quality, the exterior and apparent quality is only meant, and further, that it is usual for the master to insert words denoting that the quality and quantity are only according to the representation of the merchant, of which practice he' approves, &c.”
In Parsons’ Maritime Law, 143 (ed. of 1859), it is said : “ The bills of lading are evidence against the master or the owner of the ship, not only as to the reception of the merchandise, but as to any material fact stated in them, respecting the quantity or quality or any other element in the description of the goods. It is, therefore, usual to describe them only as so many boxes or bales, or parcels numbered and marked as per margin. Sometimes the words contents unknown, or said to contain, &c. are added, and if the words ‘ containing, &c.’ are added, which is also not unusual, the master and ship are held only to deliver the boxes as they were received by them.”
It is evident, that customarily the shipper and the master, at the time of forming the bill of lading, have their attention fixed upon what statement shall be made in it as to the quality of the merchandise. It seems to be a reasonable demand of the shipper, that so far as the quality is disclosed by the external appearance of the *353 shipment, that quality shall be given in the bill of lading. The object in part of any statement as to the shipment, is that of identifying the latter, and there is no reason for refusing to do that by description of quality when it-appears.
The master, it is true, may add the words that were added in this case, “ contents unknown,” in a proper-case ; that is, when the contents do not appear. But-should there be a statement of the quality of the shipment, these added words will not neutralize the statement, but only qualify it, so that the whole will be considered to mean that the external appearance, if there be an. external appearance, was of the quality specified.
The cases cited in Lawson on Contract of Carriers,, § 207, support the statement of the law on this point: “ ‘ Value and contents unknown.’ These words exclude-the inference of any admission by the carrier as to the-quantity or quality of the contents of the package of the-time of delivery, beyond what is visible to the eye or-apparent from handling it. Nothing is implied but the-receipt of the property in good order externally, and the-carrier may show by parol that the value and contents were below the estimate placed upon them by the shipper (The California, 2 Sawy. 12 ; The Columbo, 3 Blatchf 521; Clark v. Barnwell, 12 How. [U. S.] 272).” A receipt-for boxes of raisins would imply the receipt of “boxes-filled with raisins ” (The Bellona, 4 Ben. 503 ; 2 La. Ann. 694; Lebeau v. Genl. Steam Nav. Co., L. R. 8 C. P. 88).
In the present case, the evidence is convincing that if' the shipment had been of manila hemp, it would have-had the external appearance of that article, and that a shipper, in the ordinary course of trade, might have procured a bill of lading, which, in appropriate words, would have signified that fact.
Practically, both the parties to this action would have had, in such a bill of lading, and in the circumstances which would give rise to such a bill, an important guard against the fraud that was practiced. For, on the facts, *354 it would have been much more difficult to make a bale of something comparatively without value, that would have the external appearance of hemp, and in bales of the usual shape in trade, than to commit the fraud disclosed by this case. This, however, is not a test of the rights of the parties. The question is, was the bill of lading of the kind intended by the agreement of the parties ?
It was argued that the intention was to describe documents that, taken together, would import that the shipper had shipped hemp, and that such was the import of the documents generally, although one of them, in the bill of lading, used the word merchandise. As to this, it may be said that the documents were to be such as would be in London before the plaintiffs were to accept the bills of exchange, and that in fact there was in London, only the bills of lading, and an indorsement upon their backs of “abstracts of invoices.” These abstracts were no part of the bills of lading, were not supposed to be presented to the master, and had nothing to do with the identification of the kind of shipment that was in fact made. The security consisted of the bills of lading, and the intention was they should be of “ manila hemp.”
My opinion on the whole case is that the parties intended that the bill of lading should refer to manila hemp specifically. It is unnecessary to decide what form should have been adopted. If the form were “bales of manila hemp, contents unknown,” or “said to be,” or “having the appearance” of manila hemp, the parties would have had an assurance that is absent from the case.
Judgment affirmed, with costs.
Van Vorst, J., concurred.