## THE DONDO.

(District Court, S. D. New York. December 3, 1921.)

1. **Shipping ⬅132(5)—Facts held to show skins were damaged by sea water.**

   On libel against a ship for damages to a shipment of lambskins, evidence that the damage could have been caused only by sea water or by improper dressing, and that all the damaged skins in each bale were together on one side of the bale, sufficiently shows that the damage resulted from sea water.

2. **Shipping ⬅132(5)—Recital goods were received in apparent good order is prima facie proof there were no exterior signs of damage.**

   A recital in the bill of lading that the goods were received on board ship in apparent good order and condition makes a prima facie case on behalf of shipper that there were no exterior signs of damage when the goods were delivered to the vessel.

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**3. Shipping ⬮132(3)—Burden of proving receipt by ship in good order does not shift from shipper.**

A recital in the bill of lading that goods were received in apparent good order merely creates a presumption in favor of the shipper, and does not shift from him the burden of proof that the damage occurred on board the ship.

**4. Shipping ⬮106—Recital of receipt in apparent good order does not admit burlap covering was unstained.**

Where it was customary to use secondhand burlap for wrapping bales of lambskins, and such covering was frequently stained before use, a recital in the bill of lading that lambskins wrapped in burlap were received in apparent good order and condition was not an admission that there were no stains on the burlap.

**5. Shipping ⬮132(5)—Evidence held to show damage by sea water was not caused on board ship.**

Evidence that bales of lambskins had been stored in a pile in the same hold, and that a few skins on one side of each bale were damaged by sea water on arrival at destination shows that the damage was not received on board the ship, in which event all of the skins in the outside bales would have been damaged before any of those in the bales on the inside of the pile, whereas the damage which appeared might easily have resulted while the skins were being transported to the ship in lighters.

In Admiralty. Libel by Edwin L. Meyers and others, copartners trading under the firm name and style of Louis Meyers & Son, against the steamship Dondo. Libel dismissed.

This is a libel in personam by a consignee of lambskins from Spain, against the ship, a common carrier. The consignment consisted of 49 bales, each containing about 144 skins, wrapped in burlap. The goods were originally shipped from Barcelona and laden on the steamer at Lisbon from lighters. There is no evidence of how they were carried to the port of Lisbon or how long they lay in lighters.

The steamer reached New York on December 19 or 22, 1918, and the bales were discharged upon the pier for the most part on December 27th. They were then taken by rail to Gloversville, N. Y., where they were examined on January 9th. At that time the burlap was found discolored with stains, black and brown, which were caused by the fact that they had been at some time wet with either fresh or sea water, and thereafter dirtied. The contents of the bales was also found to have been damaged; some of the skins in each bale being brittle, and either valueless or nearly so. The skins were all laid flat, and in each case the damaged skins in any bale lay side by side on one side of the bale. The damage was of a character which could have arisen only from sea water or from improper dressing.

On receipt of the goods at Lisbon, the steamer gave a bill of lading "in apparent good order and condition," "contents unknown." She proved that they were all stowed in hold No. 3, with cork along the sides of the hold, and a wide sheet of duck covering them at the top. The hatches were not opened on the voyage, and were covered with three tarpaulins, of which two were new.

In the year 1918 burlap was in strong demand and little was to be had. In consequence many shipments were covered with secondhand burlap, which was stained and dirty from former use. It did not appear whether, when originally shipped, the burlap in question was secondhand, but at Gloversville it had that appearance. This might have been occasioned by the usage to which it was submitted between Barcelona and Lisbon. Clean sea water alone will, however, produce blue stains upon burlap, and as it comes into a ship's hold may produce other colored stains.

Henry B. Potter, of New York City, for libelants.
Herbert K. Stockton, of New York City, for claimant.

⬮For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

LEARNED HAND, District Judge (after stating the facts as above).
[1] I think it proved that the damage was caused by sea water. The only alternative is bad dressing, and this could not account for the fact that in each bale examined there were damaged skins which all lay side by side on one side of the bale. Had the damaged skins been badly dressed, they would have been interspersed generally among the rest. As the ship has no exception in the bill of lading on which she may rely, she is liable if the goods were delivered in good order. The Folmina, 212 U. S. 354, 29 Sup. Ct. 363, 53 L. Ed. 545, 15 Ann. Cas. 748.

The skins could not have been damaged by sea water between New York and Gloversville, and the period of their possible injury is by that much limited. The burlap might have been wet and become stained, however, during that time, for the stains were not necessarily due to sea water. However, it is to be remembered that the most badly stained side of the burlap was where the damaged skins lay. This justifies an inference that the stains came from sea water, to which, of course, there may have been added dirt and other causes, while wet.

[2] And so the question is whether the libelants have proved that the goods were sound when delivered. Their only proof is the recital in the bill of lading. Now, while this does not, especially when coupled with the phrase "contents unknown," constitute an admission that the goods are in good internal order, it makes a prima facie case that on the exterior there were no signs of damage. Nelson v. Woodruff, 1 Black, 156, 160, 162, 169, 17 L. Ed. 97; Argo S. S. Co. v. Seago, 101 Fed. 999, 42 C. C. A. 128; The Aki Maru, 255 Fed. 721, 167 C. C. A. 67.

[3] These cases, indeed, go so far as to say that in such cases the burden of proof shifts from the shipper to the ship. I can hardly think that this is meant quite literally. The shipper must show damage while in the carrier's hands, and it is only an excuse, e. g., an exception in the bill of lading, that the carrier must allege and prove. Though prima facie the admission of the bill of lading may be enough to show delivery in good order, I do not see how the burden of proof, which in general never shifts, can shift upon the ship to show that the goods were not sound when delivered. The phrase "burden of proof" is often used somewhat loosely in place of presumption and that I think is what is intended in the cases cited.

However, a presumption might be enough in the case at bar, if the admission in the bill of lading extended to the condition of the skins themselves. As I have said, it does not, for it does no further than what it says, "in apparent good order and condition," "contents unknown," and that only dispenses with evidence that the bales so far as external appearances went were in good condition. The Solveig (D. C.) 217 Fed. 805; Clark v. Barnwell, 12 How. 272, 284, 13 L. Ed. 985; Bradstreet v. Heran, 2 Blatchf. 116, Fed. Cas. No. 1792a.

Unless it follows as a reasonable conclusion from that admission that the contents was also in good condition, I do not understand that the shipper has established even a prima facie case. Indeed, were it

not so, the ship would be under an unfair disadvantage. There are many cases where the covering of the goods may be in good condition, and in which it does not follow that the contents are so as well. Suppose, for example, that cutlery is taken on board in clean boxes and discharged rusty. There would be no protection for the ship, which probably could not prove the condition upon delivery. While there is indeed language in the books which seems to impose upon the ship the duty of disproving good condition on delivery merely because the external appearance is good, I cannot find any decision which so holds, and the limitation of the effect of the admission in the bill of lading to external condition seems absolutely to negative its probative force beyond the inferences to be drawn from that fact.

[4] Perhaps, however, that point is not up in the case at bar, because the evidence shows that, if the bales were clean when delivered, the sea water damage which the turnout showed must have occurred on board. This follows from the fact, fairly deducible, that if they had been damaged by sea water before delivery the burlap would have been itself stained. Therefore I regard the libelants' prima facie case as turning upon the proper interpretaion of the words "in apparent good condition."

Normally, it would perhaps be fair to assume that burlaps, stained and dirty, would not be accepted as in good condition; but I think that under the proof at bar any such interpretation of the language of the bill of lading must be qualified by the practise then common of using secondhand burlap to cover rough cargo. Such burlap might have exactly the stained and dirty appearance of that which covered the skins. If the practice had become prevalent a master would hardly feel called upon to note upon the bill of lading a condition which indicated nothing unusual. "Good condition" means, I take it, that condition in which sound cargo is commonly shipped. Burlap is a rough covering at best, and stains upon it did not mean at that time that it had suffered any damage while used to cover the cargo actually wrapped within it. If torn or ripped, the case would be different. Hence it seems to me that the admission must not be interpreted as meaning that the burlap was not stained when delivered.

[5] So much for the libelants' prima facie case, which appears to me insufficient, even when taken alone. However, an admission in a bill of lading which has not been negotiated is not an estoppel; it is only an admission, and as such open to contradiction. The whole facts of the case seem to me to negative the possibility that the bales were wet by sea water while in the ship. I do not rely, of course, upon the mate's testimony that no water entered the hold; but I do rely upon the stowage of the skins as he describes it, testimony which he would hardly have fabricated. They were piled in the center of the hold, with cork on either side, and a sheet of duck above. Sea water must have entered, if at all, from the deck, the skin of the ship, or the bilges.

Now, it appears that there were damaged hides in every bale, and that the damaged hides in each bale were laid together on one side of the bale. Consider the damaged hides lying in those bales which were

in the center of the stow. Clearly they would not be wet by any sea water which had not permeated all the bales which lay between them and the source of the water. Such bales could not be reached till the bales nearer to the water had been soaked through, and all the skins in those bales damaged. Moreover, since all the bales contained damaged skins, all the bales must have been soaked with sea water, except those furthest from source and level of the water. If, therefore, the damage happened on shipboard, the damage would not have been of the kind actually suffered. From the evidence one must conclude that all the bales were wetted, and only on one side. This was impossible while they were stowed solid in the hold of the ship. Therefore it appears to me demonstrable that the sea water which damaged the skins did not reach them in the hold.

There is reason enough to suppose that it happened between Barcelona and Lisbon. That carriage was as likely—if I may guess, more likely—to have been by water than by land. If the bales were laid in single tiers on a wet deck, their bottoms would be wetted; or if in double tiers, open to spray, the bottom of the first and the top of the second tier would be wetted. A short time on lighters would alone have been enough. All these facts the libelants could prove, not the ship, and there is no evidence about it. I need only find that they have failed to carry the burden of showing that the goods were damaged while in the ship's custody. In fact, it appears to me that the ship has shown the contrary.

Libel dismissed, with costs.