BRONSTEIN BROS. & CO., Inc., v. SOCIETA ANONIMA CO-OPERATIVE FRA LAVOR-ATORI DEL MARE PER L'ESERCIZIO DELLA NAVIGAZIONE CON NAVIGILIO NATIONALE GARIBALDI.

District Court, E. D. New York. January 13, 1928.

No. 8101.

1. Shipping &106(3)—Ship's bill of lading recital, "apparent good order and condition," applies only to cases, not contents.

Recital in ship's bills of lading for goods in cases, "apparent good order and condition," applies only to the cases, not their contents.

2. Shipping &106(3)—Exemption in ship's bill of lading of liability for "breakage" held not to extend to warpage.

Under exception of loss from breakage in ship's bill of lading for goods packed in cases, negligence must be shown to render ship liable, for breakage, but the exemption does not extend to warpage of the cases.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Breakage.]

In Admiralty. Suit by Bronstein Brothers & Co., Inc., against the Societa Anonima Co-operative Fra Lavoratori Del Mare Per L'Esercizio Della Navigazione Con Navigilio Nationale Garibaldi. Decree for libelant.

Single & Single, of New York City (Robert E. Hill, of New York City, of counsel), for libelant.

Loomis & Ruebush, of New York City (Homer L. Loomis, of New York City, of counsel), for respondent.

CAMPBELL, District Judge. This suit is for cargo damage. There were packed in good order and condition, at the factory of Giulio Corti F.lli, at Signa, Italy, 247 cases of straw hats, in each of which cases were packed twelve cardboard boxes each containing 6 hats, or 72 hats in all, in each case.

There was nothing unusual about the character of the cases, which were 38 inches by 30 inches by 39 inches, made of spring wood three-eighths to five-eighths inches in thickness, with two one-half inch wooden battens all around the ends, reinforced by three strips on each end. They were shipped by rail from the factory to the pier at Leghorn, a distance of about 60 miles. No evidence was offered as to any conditions of weather or care while the cases were in the custody of the railroad, except that a member of the manufacturers' firm testified that they were shipped in closed freight cars.

The forwarding agent was the senior branch of the international forwarding firm of F.lli Gondrand.

On October 30, 1924, the cases in question were transported from the pier by lighters to the steamship Pietro Gori, on which they were shipped to New York, and bills of lading therefor were issued by the master or agent showing the shipment of the cases in apparent good order and condition.

On the discharge of the said cases at New York, it was discovered by the representative of the libelant that some were broken, some recoopered, some warped, and some in good condition. Prior to the making of that discovery, some of the cases had been removed without any notation being made of a damaged condition.

The libelant has introduced in evidence a certificate dated December 27, 1924, verified January 13, 1925, made by Antonio Bozzalla, on behalf of and representing Riccardo Mangini fu Fsco, agents of the ship, that the shipment was in good order and condition when loaded, and contends that thereby the shipment was to be considered as though made on a "good order" bill of lading.

This contention does not seem to me to be sustained, because, in the first place, the certificate is inadmissible, and, in the second place, no authority of those described as agents is shown to bind the ship two months after the commencement of the voyage and some time after the arrival of the ship at New York.

The receipt in apparent good order and condition, and the delivery in apparent bad order and condition, was shown, but the claimant contends that, under the bill of lading, the ship is exempted from liability for damage due to breakage unless negligence on the part of the ship be shown.

[1] The recital of the bill of lading of the cases in "apparent good order and condition" applies only to the exterior condition of the cases and not to their contents. Clark v. Barnwell, 12 How. (53 U. S.) 272, 13 L. Ed. 985; The Vincenzo T., 28 Fed. Cas. 1199, No. 16948; The Dondo (D. C.) 287 F. 239.

The proof that the hats were packed in good condition at Signa does not prove that they were in the same condition when delivered to the ship; no witness having been called to show that the damage did not occur while in the possession of the land carrier. The California, 4 Fed. Cas. 1058, No. 2314; Vernard v. Hudson, 28 Fed. Cas. 1162, No. 16921; The Vincenzo T., supra; The Dondo, supra; The Toyohashi Maru (D. C.) 13 F.(2d) 871.

We thus have an ordinary "apparent

good order and condition" bill of lading as fixing the rights of the parties.

If the cases were broken or warped when received at the ship, they were not in apparent good order and condition, and we must therefore start with the proposition that they were delivered to the ship in apparent good order and condition.

[2] If breakage occurred while in the possession of the ship, the ship is exempted from liability unless its negligence be shown. Clark v. Barnwell, supra, at page 279; The Folmina, 212 U. S. 354, at page 362, 29 S. Ct. 363, 53 L. Ed. 546, 15 Ann. Cas. 748; The Isla de Panay, 267 U. S. 260, at page 271, 45 S. Ct. 269, 69 L. Ed. 603; The Konigin Luise (C. C. A.) 185 F. 478; The Solveig (D. C.) 217 F. 805; The Arpillao (C. C. A.) 270 F. 426.

I am unable to find any proof of negligence on the part of the ship.

No recovery can be had where the cases delivered were apparently sound.

The ship did not waive its defense of the exemptions of the bill of lading, by allowing the removal of the hats under the conditions imposed, and the surveyors representing the ship did not agree that the ship was to pay for reconditioning all the hats.

No recovery can be had where the cases were broken, but breakage does not in this case mean warpage.

The bill of lading was drawn by the ship or her agents on her behalf and must be construed most strongly against her. What was in the minds of the parties when the exemption of breakage was agreed upon?

The fact is that, in loading and discharging the cargo, be the ship as careful as possible, there is always danger of bringing the cases into contact with the hatches or some object from which breakage ensues.

Warpage does not come from like causes, but generally from moisture or pressure long sustained, which is exactly the opposite from breakage, which is generally occasioned by a sharp blow, and in the instant suit the warpage was occasioned by pressure and not by moisture.

The parties agreed that libelant should take the cases and have the condition of the cases noted, as taken from the pier, as sound, broken, or warped, except the few truckloads taken before the question was raised, and in my opinion the purpose of such notation was to preserve the ship's defenses as to the several classes of cases. Care in handling the cases while in possession of the libelant was satisfactorily shown.

The ship is liable for any damage to the hats in the cases noted as "warped," which were taken from the pier, where such damage followed the lines of the warpage of the cases.

I entirely reject the statement found in the letter of Pilcher & Cocks to the libelant, dated December 12, 1924, with reference to frailness of construction, and find that there is no evidence whatever on which can be based the claim of frailness of construction of the cases.

The contention of the libelant that a presumption must be indulged in against the ship because her officers were not called does not seem to me to be sustained, because libelant offered no proof of negligence on the part of the ship, and the location of the goods and the manner of their stowage on the ship was clearly shown by the chief delivery clerk of the steamer, who saw the cases in question before their discharge.

Libelant may have a decree in accordance with this opinion, with costs and the usual order of reference.