## THE TYMERIC.

## QUAKER OATS CO. v. BANK LINE, Limited.
### No. 11620.

District Court, E. D. New York.
April 25, 1933.

Harry D. Thirkield, of New York City, for libelant.

Kirlin, Campbell, Hickox, Keating & McGrann, of New York City (Michael F. Whalen, of New York City, of counsel), for respondent.

GALSTON, District Judge.

On May 30, 1929, there were shipped and placed on board the steamship Tymeric, then lying at the port of Calcutta, 50 bales of Hessian cloth alleged to have been received in good order and condition, for transport to Boston. It is alleged that the Tymeric failed to deliver the merchandise in the same good order and condition as when shipped.

The bill of lading provided: "Clause Paramount. Indian Carriage of Goods by Sea Act 1925. This bill of lading is and shall have effect subject to the terms and provisions of the Indian Carriage of Goods by Sea Act 1925, and of the Rules comprising the Schedule thereto as in the said Schedule set out and or as applied by the said Act."

It is urged that, by reason of the Indian Carriage Act, it is incumbent on the respondent affirmatively to prove diligence in having made the ship seaworthy, and absence of negligence.

The shipment was loaded in No. 1 lower hold around the square of the hatch. It covered the forward half and was disposed on other cargo. There were in all 257 bales of Hessian cloth in that hold, and the cargo surrounding the Hessian cloth was also Hessian cloth. The dunnage was carefully disposed. On the ship's side were placed cross sticks, grating fashion, each stick two inches in diameter, keeping the cargo away from the ship's side at least two inches. Adequate wooden flooring was placed over the tank top. Bamboo mats were used against all the iron work. Before the cargo was loaded all holds and the bilges were cleaned and dried. Over the cargo battens, cross sticks were placed, grating fashion, and the cargo was covered with rush mats.

The space between the lower hold and 'tween-deck was left open for ventilation.

The Tymeric was rated A–1 at Lloyds, gross tonnage 4,780 tons, registered tonnage 5,228, five hatches on the main deck, five between decks, five cargo compartments on the main deck, five between decks. There were four ventilators in each of holds Nos. 1, 2, 4, and 5.

As to weather conditions, it appeared that on leaving Calcutta a heavy southwest monsoon was met, the vessel shipping very heavy water. On June 4th and two succeeding days, strong southwest winds and heavy seas were encountered, the vessel again shipping heavy water. On June 18th, 19th, and 20th, again heavy seas resulted in the vessel shipping heavy water, and on a subsequent occasion, July 17th, the vessel shipped water. During the bad weather the hatches were shut

down. When the vessel began shipping seas, canvas covers were put on the ventilators. No sea water or other water entered the No. 1 lower hold from the time the ship loaded at Calcutta until it was discharged at Boston. When the cargo was discharged on arrival of the ship at Boston, moisture from sweat appeared on the ship's side and overhead beams in hold No. 1. No damage was found to the cargo in the 'tween-decks which was discharged at Halifax, nor was the cloth on top of the cargo in question damaged.

I think it may reasonably be inferred from the testimony given by the witnesses that the damage, if any, was owing to the moisture produced by the sweat in the hold. This is a usual condition arising from change in temperature, from a hot climate to a cold climate. Such sweat would account for the rust on the bands of the bales. The testimony of Calderwood and Row, the second officer, leaves no doubt as to the seaworthiness of the vessel. In addition, the sufficiency of the ventilation is corroborated by Captain Cocks, the expert cargo surveyor, called on behalf of the respondent.

Under the bill of lading the steamer is not liable for damage caused by sweat unless indeed it can be shown to have been caused by the negligence of the vessel. But assuming the burden to be on the respondent, as is contended by the libelant, because of the provisions of the Indian Carriage Act, the respondent has met that burden, and by convincing evidence shown that the damage was caused by sweat without negligence, and that the vessel was in all respects seaworthy, with a sufficient ventilation equipment, and that the cargo was properly stowed.

Indeed, from another point of view, the libelant's case exhibits infirmity. In the first place there is no proof offered as to the condition of the contents of the bales at the time that they were shipped, or proof that the cargo was not delivered in Boston in like order and condition as when shipped. It is true that the bill of lading recites that the cargo was "shipped, in good order and condition," but adds, "weight, measure, quality, contents and value unknown."

This bare recital in the bill of lading can be accepted as proof only of the external condition of the bales at the time of shipment. Monnier v. United States (D. C.) 16 F.(2d) 812; The Dondo (D. C.) 287 F. 239. That the external appearance indicated that the bales were "shipped in good order and condition" may well be admitted without affording grounds for the inference that the contents were free from moisture.

The libel will be dismissed.

If this opinion is not in sufficient compliance with the rule requiring findings of fact and conclusions of law, submit findings of fact and conclusions of law in accordance therewith.