## BINGHAM et al. v. OSAKA SHOSEN KAISHA.

District Court, S. D. New York.
July 25, 1935.

Hatch & Wolfe (by Carver W. Wolfe), of New York City, for libelants.

Crawford & Sprague (by George C. Sprague), of New York City, for respondent.

BONDY, District Judge.

On February 8, 1927, there were delivered to the respondent as a common carrier at Tientsin, China, four bales of press-packed untanned rabbit skins to be carried by the Seikyo Maru to Darien and there to be transshipped to the Havre Maru for transportation to New York, where they arrived and were discharged April 18, 1927. They were delivered and receipted for in good order and condition on April 19, 1927, but on examination were found to be "heated, soft, rotted and stuck together." Notice of the damage was given to respondent's agent by letter mailed April 20, 1927 and received April 21, 1927.

The bill of lading provides that neither the ship nor carrier shall be liable for the consequences of chemical action, decay, rotting, outward soiling of packing, heating, or sweat. Since it appears conclusively that if the damage occurred on shipboard it resulted from heating, sweat, decay, or rotting, the respondent cannot be held liable for any damage arising from any of the enumerated causes unless occasioned by respondent's negligence. See The Malcolm Baxter, Jr., 277 U. S. 323, 334, 48 S. Ct. 516, 72 L. Ed. 901; Schnell v. The Vallescura, 293 U. S. 296, 55 S. Ct. 194, 79 L. Ed. 373.

■ Section 4281 of the United States Revised Statutes (U. S. C. title 46, § 181 [46 USCA § 181]) expressly relieves the master and owner of a vessel from all liability as carriers, for loss or damage to specified property including furs unless written notice is given by the shipper of the true character and value thereof and entered upon the bill of lading. Since these provisions have not been complied with, the libelant must prove that the damage arose through the negligence of the respondent. See La Bourgogne (C. C. A.) 144 F. 781, affirmed Desloins v. Compagnie Générale Transatlantique, 210 U. S. 95, 28 S. Ct. 664, 52 L. Ed. 973.

■ The four bales of rabbit skins were stowed in lower No. 3 hold. This hold was about fifteen feet from the boiler room from which it was separated by warm fuel oil tanks and a steel bulkhead sheathed with thick wooden planks. Wood oil in barrels covered the entire bottom of the hold. Over those in the forward part of the hold was a shipment of fifty tons of linseed meal, and aft and nearer the oil tanks, skins in bales, among which were libelants' four bales.

Linseed meal tends to heat unless stowed in well ventilated cargo space. The heat which it generates will give rise to sweating, the condensation of moisture in warm air when the ship strikes cold air and cold water.

It is evident that such sweating will cause skins to rot if the moisture reaches them.

The hold, a small one, twenty by twenty-four by forty-nine feet, was provided with two permanent ventilators which opened above the deck. They reached the front of the hold only, and supplied good ventilation only for the forward portion of the hold, forcing heated air into the after part. The mate testified that good ventilation could be secured in the after part of the hold only with the hatch open. Additional temporary wooden ventilators, which extended through the linseed meal, terminated below the hatch covering and were useless in wet weather and heavy seas causing spray.

The rabbit skins were placed in a hold with a cargo which would be apt to heat unless well ventilated, but which could not be properly ventilated when the hatches had to be shut down in rain or rough seas.

Such stowing was negligent [see United States v. M. Levy's Sons (C. C. A.) 288 F. 544], whether or not under ordinary conditions two ventilators abreast and not diagonally opposite one another were sufficient [see Hog Island (C. C. A.) 48 F.(2d) 101, affirming (D. C.) 43 F.(2d) 243; The Pacific Fir (C. C. A.) 57 F.(2d) 965], and whether or not failure to open and ventilate the hatches on many days was due to inclement weather.

■ Though there is evidence that the skins were scraped, sun dried, and inspected when in a warehouse January 31, 1927, there is no evidence that they were kept dry or as to how they were cared for between the time they were inspected and the time of delivery to the respondent nine days thereafter. During that time they were in the shipper's control. In such circumstances there is no presumption that the goods remained in good condition. See Cohen v. Holland-American Line (The Volendam) (D. C.) 6 F. Supp. 247, 1934 A. M. C. 60.

The libelants contend that though the bill of lading recites the goods were received in apparent good order and condition, they made a prima facie showing that the carrier received the goods in good condition by introducing a mate's receipt for the goods stating that they were "in good order." The receipt, however, also states that it is subject to all the "conditions" inserted in the bill of lading, the first of which conditions recites "Contents, quality and value unknown."

■■ The conditions of the bill of lading are deemed to be recited in a receipt which so states. See Lawrence Leather Co. v. Norton, Lilly & Co. (D. C.) 15 F.(2d) 101. And the condition being considered part of the receipt in question, the admission in the receipt applies only to the external condition of the bales. Clark v. Barnwell, 53 U. S. (12 How.) 272, 13 L. Ed. 985. Moreover, even if the conditions of the bill of lading were not considered to be embodied in the receipt, there is some authority that the admission "received in good order and condition" refers to the external condition of the bales only. See Cohen v. Holland-American Line (The Volendam) (D. C.) 6 F. Supp. 247, 1934 A. M. C. 60; The T. A. Goddard (D. C.) 12 F. 174. Contra, The Mascotte (C. C. A.) 51 F. 605. It is not contended that the contents of the bales were actually examined. The bales were iron strapped when delivered to the respondent.

■ However, whether or not the mate's receipt was an admission of the good condition of the goods, the evidence is convincing that the damage did not occur as a result of the respondent's negligence; for, conceding that the stowage was negligent and that the libelant must prove only that such negligence might have caused the damage, the respondent may show that its negligence did not cause the damage. See Gulden v. Hijos de Jose Taya S. en C. (C. C. A.) 252 F. 577, 578.

■ Upon discharge, the goods were receipted for as in good condition. The burlap covering was discolored by dirt. It was not water or sweat stained on the outside, though water or moisture stained on the inside. The condition of the bales when opened suggested that they had received a wetting from some outside source, and that the outside had dried while the inside remained moist, thus causing decomposition of the furs. The libelants' expert testified that the moisture stains on the inside of the burlap seemed to come from the decomposition of the furs, though it was difficult to tell whether it arose through external or internal causes. The decay was confined to two sides of each of the four bales and had not penetrated to the center of any.

The four bales were stowed with thirty-nine other bales of skins. All but one of the four bales which was on the outside were surrounded by other bales.

None of the linseed meal was damaged or affected by sweat or moisture when discharged at San Francisco, and apparently no claim was made for any damage to any of the cargo or skins other than those of the libelants. All bales were delivered externally dry in New York. None of the Japanese mats with which the skins were covered was moisture or water stained. No sweat was observed at Los Angeles or New York. The temperature of the hold was taken every day and did not show any unusual heat. There was no indication of any sweat.

The court therefore believes that these four bales must have been wet before they were delivered to the ship and that they did not become wet through sweat or as the result of any negligence on the part of the respondent.

■ The bill of lading provides that neither the ship nor carrier shall be liable "beyond the proportionate amount of three hundred yen for any one package unless the bills of lading are signed with the value declared thereon." This identical clause of this very respondent has been twice considered valid in this district. Olivier Straw Goods Corporation v. Osaka Shosen Kaisha (D. C.) 42 F.(2d) 717. The shipper has been offered a choice of rates. He could have declared the value and paid an ad valorem rate and rendered the carrier fully liable. In any case therefore the respondent's liability would be limited to the proportionate amount of 300 yen per bale. The damage reduced the value of each bale 80 per cent., or 240 yen per bale, and at 28.81 cents exchange, the damage would be limited to $276.58.